Per Curiam.

On the trial it was proved by the plaintiffs that they did then, and for about twenty years preceding, had lived on De Bruyn’s patent; that they had a house and orchard and 28 acres adjoining the same, as early as 20 years preceding, and that they held other parcels of land; that the patent was divided, in 1793, and the plaintiffs then took actual possession of the loci in quibus, which were uncleared wood lots, and that the defendants had cut- wood *126 in some of them; that in 1796, the plaintiffs had leased parts of the lots contained in the declaration; that the plaintiffs claimed the whole of the lands in De Bruyn’s patent, under the will of Stephanus Yan Alen; that their mother was Hyletje, a daughter of Stephanus Yan Alen ; that in 1751, or in 1752, she lived where the plain-[*87] tiffs now do on the patent, and the ""plaintiffs then lived with her; that the land near the house was then cleared; that Hyletje died in 1767, and other parcels were cleared by that timQ, or at least by 1772 ; that one piece was cleared in 1761, and then in possession of the plaintiffs; that Stephen Yan Alen, the testator, had a son Cornelius who had a son Stephen, who had a son Cornelius, each of whom was the eldest son in succession.
On the part of the defendants, the will of Stephanus Yan Alen was produced, bearing date the 17th of May, 1740. It was proved that the testator left three sons, and that two of them died above fifty years ago without issue; that Maria was the daughter of Lawrence, the eldest son of Stephanus, and who died in the lifetime of his father; that Maria married, at the age of 20, one Herkemer, and in 1776 or 1777 went to Canada to her husband; that her husband died in 1795, and that ever since she resided in Canada. The defendants then offered a deed to them from Maria Herkemer, dated January 8, 1800, but this was overruled; that the defendants further proved, that in 1799, the son of Maria Herkemer offered the premises for sale to the plaintiffs for 1007 ; that the plaintiffs offered a price, but no bargain was concluded; that a few days after, one of the plaintiffs admitted that Maria' Herkemer was heir to one ninth of his land, the deed was then offered again, and rejected; the defendants further proved, that in 1751 or 1752, on a division of part of De Bruyn’s patent, and which was after the death of Stephanus, his eldest son Cornelius acted as agent for the share of Stephanus, and claimed, besides his own share under his father’s will, one third of the two shares of his two brothers who were dead; *127 that Henry Yan Dyck claimed a ninth part of the patent, and that Hyletje, and the plaintiffs after her, claimed the whole share of Stephanus; that about that time Cornelius took possession of part, and paid four ninths of the costs .of an ejectment suit in defending the land, and that the plaintiffs paid five ninths of the costs; that on the division of the patent, in 1793, the share of Stephanus was designated as laid out for his representatives. It was further proved that the plaintiffs had offered 100?. for Maria Herkemer’s share, and one of the plaintiffs said Maria had a right to money, and not.land by the will; that at another time (about 4 years ago) one of the plaintiffs confessed he meant to buy a part of the premises of *Mrs. [*88] Herkemer; that Cornelius Yan Alen, the son of Stephen, who was the son of Cornelius, had for many years uninterruptedly cut wood in several of the lots mentioned in the narration, and that as well before as since the division in 1793; and that he, for several years past, had in possession, and still has, two pieces of land in the land allotted to the share of Stephanus Yan Alen: the deed of Mrs. Herkemer was again offered and refused, and a verdict taken for the plaintiffs.
It appears by the will of Stephanus Van Allen, (a) referred to in the case, that he gave to his “ three sons, to wit, Cornelius, Jacobus and Ephraim, and their heirs, all Ms lands or share in the De Bruyn’s patent, each an equal third part, with a proviso or restriction that they should pay to his daughters Hyletje,_ Elbertie, Jannettie and Christina, and to his granddaughter Maria, (daughter of his deceased son Lawrence,) each 12?. 10s. in six equal payments: and that if any of the said children, or the grandchild, should die under age, or without issue, the portion of such child or grandchild to be divided equally among the survivors:” the testator further desired his said three sons, “ that in case any of his said daughters should be inclined to purchase *128 of them the land in De Bruyn’s patent for a living for herself and family, that then they let such of his daughters have it at the same price they had it for.”
This controversy, upon a statement of facts substantially the same with that in the present case, was formerly brought into view before this court, and received a decision in April term, 1801. It came before the court upon a motion for a new trial for misdirection of the judge, who had charged the jury that the law was with the defendants, and who had admitted the deed of Maria Herkemer. A new trial was awarded by the court, and it is in consequence of such new trial that the present application is made.
In the former case it appeared that the plaintiffs claimed the loci in quibus as sons .of Hyletje, the eldest daughter of Stephanus Van Alen; that the defandants claimed under the recent deed of the widow Herkemer, and that her right arose under the will, she having survived the two [*89] sons of the testator, *both of whom had died without issue 55 years before the trial, when her right accrued, and that she claimed an undivided sixth part of two third parts of the testator’s interest in the patent.
The Court then decided,
1. That a deed from Oornelius to his sister Hyletje might be presumed from her entry fifty years before, and uninterrupted possession in her children since, according to the nature and situation of the land; and that this presumption was the more readily to be made since she had a right by the will to claim a deed, and had intimated her wish accordingly.(a)
2. That if this was not so, yet that the deed of the widow Herkemer was void, for she being out of possession, and no demand or claim by her husband or her for forty-two years after she came of age, the jury ought to have been directed to presume an cutter, and that if ousted, she could not convey.(b) The case in 1 Leon. 166.(c) was referred *129 to as proving that a feme covert, whilst feme covert, might be disseised, so as to render her deed before re-entry maintenance. The first inquiry that naturally arises in this case is, whether there be any change in the facts sufficient to change the conclusions of law that were drawn in the former case ?
1. With respect to the presumption that Hyletje received a deed from her brother Cornelius, the same facts are here to warrant it.
It appears that by the will of her father, an election was given to any of the daughters to purchase the premises, and a trust was raised in the will for that purpose ; that Hyletje entered upon the premises with her children as early as 1751, or 1752, and after her father’s death, and claimed the whole share of Stephanus; that she contiued in possession till her death in 1767, and that her sons have remained in possession of the loci in quibus down to the present day, and have also claimed the whole share of the testator; that this entry and possession of Hyletje must have been with the knowledge and assent of the other children, and have passed under their eye, for it appears that on the division of the patent in 1751, or 1752, Cornelius, the son of the testator, was present and claimed the whole of his father’s share, and took possession of part; that this possession must soon thereafter have been abandoned, since we find within the same year Hyletje in possession, *and this claim must soon thereafter have ceased, [*90] since we hear no more of it, and the claim of Hyletje remained sanctioned by possession; that the possession was such as the subject was susceptible of, it being understood that a large part of the premises was uncleared pine land, and from all these circumstances there arises a strong and unshaken presumption of right. A deed is justly, if not necessarily, to be presumed, and considerations of public convenience and sound policy will, under such circumstances of ancient and continued possession by colour and *130 claim of right, require the presumption,(a) We are therefore, clearly of opinion, that the decision in the former case *131 applies .and governs the present one on the first point, and that the verdict is right and ought to stand, whatever may be our opinion as to the legal operation of the deed of Mrs. Herkemer. But,
2. We think that we are also bound by the former decision to consider the deed of Mrs. Herkemer as void, and that the same facts are stated in this case to lead to the same result. Her right, under the will, and upon the death of her two brothers, had accrued upwards of fifty years before the trial. Concurrently with the commencement of her right, Hyletje had entered under a claim to the whole share of her father, and under a right to elect and demand a deed for the same. This entry and enjoyment of the premises must have been adverse to the claim of her niece; and her possession, continued down in her and her sons, had every appearance of an exclusive and independent possession. One strong mark of exclusive owenership was the extension of the clearings from time to time, and this in pursuance of a claim to the whole share of the testator made by Hyletje and her sons. It does not appear that from the time of the commencement of the right of Mrs. Herkemer down to the date of her deed in 1800, a period of about fifty years, that she ever asserted her right, or received or claimed any share in the profits of the premises, and that an adverse claim of possession was constantly before her. These facts undoubtedly amount to an ouster *132 and when the court in the former decision said that the jury ought to have been directed to presume an ouster the decision undoubtedly was, that the law raised this presumption, and that the jury were not at liberty to resist it; that it was a presumption of law arising from facts, and [*91] if so, it would not be the exercise *of sound discretion, it would be an idle and useless act, to remand this cause back to another jury, in order that the deed might be admitted, and then the jury might, under the direction of the court, presume an ouster,(a) since we perceive that the facts require that presumption, since the law raises and draws that presumption from facts of which there is no controversy, and no other presumption can be warranted. The deed was illegal evidence, when it appeared that the grantor’s right, at the time of the execution of the deed, consisted in a right of action merely. The confessions of the plaintiffs made within a few years past, acknowledging the right of Maria by offers to purchase, whether made for the sake of peace, or from a conviction of her right, are not inconsistent with the fact of the ouster ; for, admitting her claim to have been turned into a naked right, these confessions might equally have been made. They do not, therefore, weaken the conclusion drawn, or resulting from the antecedent facts.
Our opinion accordingly is, that the defendants take nothing by their motion.
New trial refused.

 He claimed one-ninth of the patent, amounting to 900 acres, chiefly pine land.

 3 Durnf. 155, 169.

 Cowp. 217.

 Slyright & Page's cast

 Where the possession is old, and has gone according to the right set up, a deed necessary to the title will he presumed. Anon. 1 Tent. .257, Warren v. Greenville, 2 Stra. 1129. But when the possession is not ancient, and shown to be against the right claimed, a deed will not be presumed. Goodtitle v. Duke of Chandas, 2 Burr. 1065. Thus, if a surrender 200 years ago be shown, yet after a subsequent possession of 150 years under a rent stated in a parliamentary survey as freehold, a grant will be presumed even against the crown. Roe v. Ireland, 11 East, 280. So on a possession of crown lands, commencing by encroachment 55 years ago, if it be continued down within 7 years, a grant will be presumed, unless it appear that by statute, or otherwise, the crown could not grant. Goodtitle v. Baldwin, 11 East, 488. So after an abandonment of premises by a tenant, and 14 years’ possession, under a lessor who was entitled to enter on non-payment of rent, a re-entry will be presumed. Jackson v. Demarest, 2 Caines’ Rep. 382. But the non-payment of rent for nine years was held not to furnish evidence to make such a presumption. Jackson v. Walsh, 3 Johns. Rep. 226. The class of cases above referred to, seems to be no more than deductions from the rule of law, by which all things done are presumed to be legally done, unless the contrary appear; as that an apprentice deed, which was acted upon, shall, after a lapse of 30 years, be presumed to have been regularly stamped, though there be not any memorandum of such a stamp in the entries of the stamp office; (The King v. Long Buckby, 7 East, 45;) but where a right has not been acted upon, it shall, after a lapse of perhaps 20 years unaccounted for, be presumed to be extinct. Therefore, if in ejectment an outstanding title in a stranger be relied on, the defendant must show it to he a subsisting title under which possession has been had within 20 years, or it will be presumed to have been extinguished. Jackson v. Hudson, 3 Johns. Rep. 375. There is another class of cases, influenced by the doctrine of presumptions, arising from the rule, that all things which ought to have been done shall be presumed to have been done, unless, &o. Therefore, where the plaintiff showed title in his lessor under a devise to trustees, with directions to convey the estate in fee to the lessor at 21, and that he had attained that age, a conveyance from the trustees was presumed. England v. Slade, 4 D. & E. 682. But as the law never presumes a wrong, (see Williams v. East India Company, 3 East, 192,) a deed will not be presumed in violation of a trust, or even in favor of a possible breach, as where the trust is doubtful Keene v. Dearborn et al., 8 East, 248. A further rule to be attended to, in regard to presumptions is, there must be some fact in consequence of and in harmony with which the presumption may be made. Thus, if an alien enemy come into a country in time of war, and continues there without disturbance, a license shall be presumed. Maria v. Hall, 1 Taun. 37, (note.) So it a feme covert has for several years received the rents of her separate estate, an au *131 tkority from her husband will be intended. Doe v. Briggs, 1 Taun. 367. And whore an agreement to convey land dated in 1689, was shown, a conveyance was, -in 1809, directed to be presumed. Jackson v. Murray, 7 Johns. Rep. 5. But when the facts appearing contravene the presumption, it cannot be drawn; as when an insufficient deed to make a tenant to the prascipe is shown, a good one shall not be presumed. Keen v. Earl of Effingham, 2 Stra. 1261. Therefore, even after 20 years’ uninterrupted use of lights, a grant will not be presumed against a landlord not in possession, unless knowledge of the lights having been made, be brought home to him. Daniel v. North, 11 Bast, 312. The doctrines of admissions, extinguishments, implications and presumptions in law, would, to the scientific lawyer, afford am pie materials for a valuable work.

 The rule is stated, that as between tenants in common, &c., there must be an actual ouster. 1 Inst. 199, b; Smales v. Dale, Hob. 120. Therefore, the mere exclusive possession and perception of profits is not an ouster, (Fair-claim v. Shackleton, 5 Burr. 2604; Doe v. Keen, 7 D. & E. 386,) unless accompanied with a denial of the right to either, in the co-tenant. Doe v. Bird, 11 East, 49. But observe that the co-tenancy cannot be availed of by the defendant at the trial if hé has not entered into the consent rule specially. Jackson v. Denniston, 4 Johns. Rep. 311. But see Doe v. Croft, 1 Camp. 173,