ALBANY,<br>Feb. 1827.

Jackson<br>v.<br>Miller.

New trial denied.

---

JACKSON, *ex dem.* WILLIAMS and WASHBURN, *against* MILLER.

EJECTMENT for lot No. 14, in *Jessup's* little patent, *Warren* county, tried at the *Warren* circuit, *July 11th,* 1823, before WALWORTH, C. Judge.

The lessors of the plaintiff claimed title to the premises on several grounds; and, among others, under an alleged sale made by the commissioners of forfeitures, to the ancestor of *Williams,* one of the lessors; also on the ground of a prior possession in *Washburn,* the other lessor, against whom the defendant had some time before recovered the premises in question, in an action of ejectment, which was defended by *Williams.*

A verdict was taken for the plaintiff, subject to the opinion of this court.

The facts, so far as they are material to the points decided, are stated in the opinion of the court.

*J. L. Viele,* for the plaintiff, cited 1 *Greenleaf's ed. L. N. Y.* 139; 1 *Phil. Ev.* 123, 302, 306, 312; 4 *Dall.* 415; 1 *Caines' Rep.* 89; 4 *T. R.* 642; *Bull. N. P.* 110; 11 *John* 456; 3 *Mass. Rep.* 399; 10 *id.* 105; 13 *John.* 118; 1 *R. L.* 128, 9, s. 1, 2; 1 *Shep. Touch.* 256; *id.* 253; 3 *John.* 386; 6 *id.* 265; 4 *id.* 211; 10 *John.* 377; *Cowp.* 102.

> A book purporting to contain the proceedings of the commissioners of forfeitures; but not proved ever to have been in their possession, though found in the clerk's office in 1806, and having lain 17 years there, is not admissible in evidence to shew a sale by the commissioners; nor will a conveyance be presumed, where such a book is shown to be genuine, unless the requisites of the statute, creating the commissioners and defining their duty, appear to have been complied with by the purchaser: and the certificate state that a conveyance was given.

The certificate of the commissioners is not evidence of title; and a conveyance should be produced, or its absence accounted for, and secondary evidence given

A prior possession is *prima facie* evidence of title in an action of ejectment; but where a recovery by ejectment is had against a prior possessor, he cannot set up his possession as the foundation of a recovery in a cross ejectment, unless it was of sufficient length to be evidence of title; as where it was for 20 years and more

Where *A's* tenant from year to year takes a lease from *B,* the act is void; and cannot work an adverse possession against *A.*

Parol declarations are inadmissible to prove or disprove title, or a disclaimer of title to lands.

*W. Hay,* contra, cited 1 *R. L.* 443 ; *Statute of* 1784, 1 *Greenleaf's ed. L. N. Y.* 135, 138, *s.* 15, 20 ; *Statute of* 1788, 2 *id.* 200 ; 1 *K. and R.* 145 ; 1 *Burr.* 119 ; 7 *John.* 157 ; 6 *id.* 21 ; 1 *R. L.* 128, *s.* 1, 2 ; 8 *John.* 107 ; 1 *John.* 322 ; 2 *id.* 445.

*Curia, per* SAVAGE, Ch. J.   The first question arising in the cause is, as to the admissibility of the book from the clerk's office, purporting to be the return of the commissioners of forfeitures.   By an act passed 12*th May*, 1784, (1 *Greenleaf,* 127,) commissioners of forfeitures were to be appointed, whose duty it was, to sell all lands confiscated, and forfeited to the people of this state ; and to give good and sufficient deeds to the purchasers.   By the 26th section, (*id.* 139,) the commissioners were to make an abstract of all sales made by them ; to contain the names of the purchasers, the description of the estates by them sold, the sums for which the same were sold, the dates of the respective conveyances, and the names of those to whom they were supposed to belong before the forfeiture. At the end of every three months, such abstracts were to be filed in the office of the clerk of the county where the lands lay.   And the clerks were to record such abstracts in a book or books to be provided for that purpose.

The book produced at the trial, is certainly no compliance with the statute.   In the first place, there is no evidence that it was ever in the possession of the commissioners of forfeitures, or came from them.   It bears no date. It has no signature, and there is no evidence that it was in the clerk's office prior to 1806, eighteen years after the functions of the commissioners had ceased.   (2 *id.* 200.) By whom it was deposited, does not appear.   It was not considered by the clerk, a genuine official return in compliance with the statute, or it would have been recorded by him in a book.   The only certainty about it is, that it was in the hand-writing of the purchaser.   In my judgment, it is not entitled to any weight ; and ought not to have been received as evidence.   The circuit judge received on the ground, that being found in the clerk's office, he would presume it the book of records of the returns of the

commissioner, made by the county clerk, in pursuance of the act. The fact of its having been 17 years in the clerk's office can give it no validity. The clerk would probably have permitted any other manuscript to have been deposited in his office for safe keeping.

But suppose we are to consider this book as the official return of the commissioners, and to have been made within three months after the sale. By the act, one third of the purchase money was to be paid down, and the residue at a future day, (1 *Greenleaf*, 132 ;) and if the purchaser failed in the final payment, he forfeited the first payment ; and the commissioner was to re-sell the land. (*id.*) The fact, therefore, that Gen. *Williams*, the ancestor of one of the lessors, became the purchaser, (and made the first payment, though even that does not appear,) cannot complete his title. He may, notwithstanding, never have received a deed. And if such a certificate is to be received as evidence of title, a purchaser who paid one third, but never completed his purchase, may, notwithstanding, obtain the property. The presumption is, that the commissioner certified all that was true in favor of the purchaser, particularly as he drew the certificate himself ; and because, if a conveyance had been given, it was his duty so to certify. In *Jackson* v. *Woolsey*, (11 *John.* 456,) the court say, " It is correct here, to presume the commissioners did their duty." So here the commissioner would have certified a conveyance, if one had been given. It was his duty to give one, upon a certain contingency. Whether that ever happened, we know not ; but the silence of the certificate raises a presumption against it. In *Van Dyck* v. *Van Beuren*, (1 *Caines*, 89,) there were facts to found a presumption upon ; the provision in the will that the daughters might purchase ; the fact that *Hyletje*, one of the daughters, took possession at an early day, and that possession continued down to the time of trial. The case of *Gray* v. *Gardner*, (3 *Mass. Rep.* 399,) merely proves, that after a possession under an administrator's sale, the previous requisites as to notice, &c. will be presumed to have been regular. So in *Coleman* v. *Anderson*, (10 *Mass. Rep.* 105,) the same presumption was allowed in support of a collector's sale, after 30 years,

In my opinion, the presumption of law is, that no con-veyance ever was given.

But suppose it to be otherwise; and that a conveyance is to be presumed; then it should have been produced, or its non-production should be accounted for, in order to lay a foundation for secondary proof. Or are we also to presume its loss, or destruction? The statute does not make the commissioners' certificate evidence of title. From the very nature of the instrument, it could afford no sort of evidence, unless there was a certificate that a conveyance had been given. It seems to me, therefore, the plaintiff totally failed in making out a paper title to the premises in question.

But the plaintiff claims to recover upon a prior possession. Such a possession is *prima facie* sufficient to authorize a recovery in certain cases; as where no title is shewn other than possession; and the law proceeds upon the ground that he who first had possession, had the better right: but when the defendant has obtained possession by virtue of a judgment in ejectment, the presumption then is changed; and a prior possession, in such case, is of no avail, unless it be such an one as is evidence of title; for instance, an adverse possession of 20 years and upwards. The points in relation to the possession are, that, 38 or 39 years before the trial, one *Buttolph* made a clearing on the lot, not knowing who was the owner; but *Andrew Hall*, then, or soon after, produced his power of attorney from the defendant, and cut timber and exercised acts of ownership. Thirty four years previous to the trial, *Buttolph*, doubting *Hall's* authority, sent his son to *Dutchess* county to purchase from *Miller*, the defendant. About 28 or 29 years before the trial, *Buttolph* sold his possession to *Washburn*, one of the lessors. Thirty one years before the trial, *Washburn* had purchased of *Hall*, who was tenant to the defendant. This tenancy was, according to the case of *Jackson* v. *Bryan*, (1 *John.* 326,) a tenancy from year to year. It is there decided, that a holding by permission of the landlord, for an indefinite period, is to be construed a tenancy from year to year, though there

be no reservation of rent; the right to sue for use and occupation being equivalent to such reservation.

*Washburn*, who purchased from *Hall*, became the tenant of *Miller*. He became invested with the rights and liabilities of *Hall*. Four years afterwards, or 27 years before the trial, *Washburn* took an agreement for a lease from *Williams*. If this be considered an attornment, it is void, and would authorize an action of ejectment, without notice to quit; but I apprehend it would not amount to an adverse possession against *Miller*. In *Jackson* v. *Johnson*, (5 *Cowen*, 74,) a person who took possession under an agreement to purchase, was considered a tenant; but it was held that the tenancy was put an end to by a subsequent purchase from a stranger; and that after such purchase, the possession of the former tenant became adverse, because the act of the tenant was an assertion of title in himself. The conduct of *Washburn*, however, had a tendency to transfer the possession from *Miller*, the landlord under whom he entered, to a stranger. This is what was intended to be prohibited by the statute; and such attornments are declared to be void. (1 *R. L.* 443. 1 *K. & R.* 145.)

But suppose the agreement with *Williams* was the commencement of an adverse possession; it had not the necessary length of time to ripen into a right, before the commencement of *Miller's* action of ejectment, which was in *January*, 1814. The first negotiation with *Williams* was 27 years before the trial. That was in 1796; of course, but 18 years had elapsed.

Adverse possession for less than 20 years, will not afford ground to presume a grant. It is partly upon this presumption, that a title by adverse possession rests for its efficacy. (1 *Ph. Ev.* 126, *and cases there cited.*)

Having come to the conclusion, that the plaintiff cannot recover upon the strength of his own title, it seems unnecessary to examine that of the defendant; but as the whole case has been examined, I will merely state my opinion upon it, without giving reasons at length. The defendant, being one of the patentees, must still be deemed

the owner, unless divested of his title by his own act, or the operation of law upon the acts of others. I have already endeavored to show, that there was no adverse possession when he asserted his claim in 1814. His declarations have been shewn, disclaiming title. It is singular that he should do so, at the time when he had possession by his tenant, *Hall*; and when two called upon him for the same purpose that he should disclaim to one and assert title to the other. If evidence of this kind was admissible, it is clear, that neither the defendant nor the plaintiff had title, for *Williams* disclaimed about the same time, (1796;) though if the latter ever had title, he must have procured it before 1788, when the powers of the commissioners ceased. But it was settled in *Jackson v. Shearman*, (6 *John.* 22,) that parol declarations are inadmissible to prove or disprove title. So in *Jackson v. Vosburgh*, (7 *John.* 186,) it was held that parol evidence of a disclaimer of title is inadmissible. This principle has been frequently recognized since; and is not to be disputed. All that part of the evidence is improper, and can have no influence on the question of title. The defendant's title, therefore, is perfect; for, after such a length of time, under a separate possession, with claim of title to the whole lot, it being known 40 years ago as the *Miller* lot, a partition would be presumed.

In my opinion, the defendant is entitled to judgment.

*Judgment for the defendant.*