DANIEL J. CAMPAU ET AL. v. SOPHIA DUBOIS ET AL.

*Ejectment between tenants in common—Adverse possession—Limitation of actions for recovering realty.*

Questions of administration have no bearing in an action of ejectment for lands the right to which was in controversy before the passage of the statute which subjected real estate to administration and gave the administrator the right to hold land of which his intestate died seized.

Depositions taken under a valid issue in partition proceedings are not necessarily inadmissible in an ejectment suit involving title to the same lands.

Statements or admissions of children in their father's life time cannot be received to affect his estate.

Offers made in negotiations for compromising suits involving titles can hardly be used as admissions of fact.

It is not error to substitute for express requests to charge, equivalent instructions in the language of the court, if the ground is fully and correctly covered.   But counsel have a right to a clear formulation of every important view of the law either as they drew it up or in some equally proper form.

The Michigan statute of limitations of 1829 barred recovery of lands after an adverse undisturbed holding of ten years.

An adverse holding must formerly have been under claim of title to make void a deed given by one out of possession; but no claim of title has been necessary to perfect an adverse title under the statute of limitations.

In Michigan, since 1846, a conveyance by an excluded owner of lands held adversely would carry what title he had, and his grantee, like himself, could sue within the statutory period of limitation.

Where one of several heirs had taken exclusive possession of land to which all were entitled as tenants in common, and had improved it without interference from the others, though they lived in the immediate neighborhood, and no possessory action was brought by them, or by their heirs or representatives for more than twenty-five years after their death, it was *held* that no possession could properly be found that was not adverse and exclusive within the statutory period of limitation, and that there could be no recovery in the right of the excluded parties.

Michigan has no statute disposing of the controversies which may arise from the exclusive possession of one tenant-in-common during a longer period than will otherwise bar the recovery of real property.

Error to Superior Court of Detroit. Submitted June 20. Decided October 9.

EJECTMENT. Defendants bring error.

*F. A. Baker, Sylvester Larned, H. M. Cheever* and *Theodore Romeyn* for plaintiffs in error. Evidence of what was sworn to by a deceased witness in a former action between the parties on the same general subject is not admissible if the point in issue is not the same, *Melvin v. Whiting*, 7 Pick., 79; *M'Morine v. Storey*, 4 Dev. & Bat., 189; *Sample v. Coulson*, 9 W. & S., 62; the question whether a party has any title cannot be tried in a partition suit, but only whether he has such undisputed title as entitles him to partition, *Hoffman v. Beard*, 22 Mich., 59; *Hemingway v. Griswold*, id., 77; unaccepted offers of compromise cannot affect one's legal rights, *Chandler v. Allison*, 10 Mich., 460; one tenant-in-common may oust his co-tenant and hold in severalty, *M'Clung v. Ross*, 5 Wh., 116.

*Baker & Campau, J. Logan Chipman* and *Ashley Pond* for defendants in error. A deposition of a deceased witness is admissible in a later suit involving the same issues, 1 Greenl. Ev., §§ 163–4; it is not error to refuse requests to charge if a connected charge covering the same ground, is given, *Fowler v. Hoffman*, 31 Mich., 216;

an offer to buy may amount to a recognition of title, or not, according to its character, *Hartford Bridge Co. v. Granger*, 4 Conn., 148; *Murray v. Coster*, 4 Cow., 635; *Parker v. Proprietors etc.*, 3 Met., 99.

CAMPBELL, C. J. This is an action of ejectment. Plaintiffs in error, who were defendants below, are in possession of lot 94, section 1, of the Governor and Judges' Plan of Detroit, being a city lot on Congress street, bordering on and partly including the bed of an old water course known as the river Savoyard. The lot came to Daniel J. Campau, on partition of the estate of his father, Joseph Campau, who died in 1863. Plaintiffs below set up title as heirs at law of Barnabas Campau and Jacques Campau, brothers of Joseph Campau, whom they claim to have been tenants in common, holding each an undivided sixth of the land, of which they insist Joseph Campau owned only four-sixths, which they claim devolved as follows:

The lot in question was conveyed by the Governor and Judges of the Territory of Michigan, April 26, 1809, to Toussaint Campau, who died intestate and without issue in 1810. He had six brothers and two sisters— Cecile (who died before him leaving several children), Jacques, Louis, Joseph, Nicholas, Barnabas, Denis and Catharine. Of these Nicholas died without issue in 1811, and Denis died without issue in 1818. Jacques Campau died in 1838 and Barnabas Campau in 1845. All the heirs surviving Denis, and their children, except Barnabas and Jacques transferred their interests to Joseph Campau in 1823 and 1824, in all their inherited estates, which included this lot, if then owned by them. Denis Campau became administrator of Toussaint's estate. Joseph was administrator of Denis, but not of Toussaint. Joseph Campau went into the exclusive possession of the property in question at an early day, and as is averred by defendants in error, in a bill filed by them, this possession began soon after the death of Denis Campau. Since

that taking of possession, as is undisputed, he held and managed the property exclusively, paid all taxes and assessments, and received all returns.

The principal questions presented by the record bear upon the quality of this possession and the effect of lapse of time. Some questions also arise upon the reception and exclusion of testimony. As some of these matters are connected with administration questions, it will be necessary in the outset to refer to the questions of descent.

There was no law in force during the pendency of these controversies which put real estate into the condition of property to be administered, and neither was Denis Campau as administrator of Toussaint Campau, nor Joseph as representing the same estate, if he did represent it, or the estate of Denis, entitled to hold land of which the intestate died seized. There seems to be no mention made of any administration of the estate of Nicholas, who died after Toussaint and before Denis. Whatever interest may have belonged to Denis can have been no more than the one-seventh part which he inherited as a brother of Toussaint and Nicholas, and which at his own death would go to the five brothers and sisters and the children of the sixth surviving him, with right of immediate enjoyment.

The right of entry, therefore, accrued in 1810 into Toussaint's estate; in 1811 into the share of Nicholas, and in 1818 into the share of Denis Campau, and the inheritance of Barnabas and Jacques Campau, if existing and not disposed of, became complete rights in those years.

In our opinion the administration questions were all improperly introduced into this controversy, and should all have been excluded. They were calculated to create false issues, and to obscure the real questions presented. The land never as an original inheritance belonged to any estate but that of Toussaint Campau. If it ever belonged to the estate of Denis Campau it was by some title which is in no way indicated by the proofs. But even if it did, it did not belong to the administration.

The points raised upon the reception of certain depositions require a reference to the chancery proceedings out of which they arose.   In 1858 a bill was filed by defendants in error asking a partition of a large amount of property against Joseph Campau, in the same right here set up.   The property consisted of some lands originally owned by Toussaint Campau, and some originally owned by Denis Campau.   Among the former parcels was the lot now in dispute.   The bill deduced title, as here, by descent, and, as before suggested, set forth an early taken and continuous sole possession in Joseph Campau.   Between two and three years after this bill was filed, in April, 1861, the causes of delay not being explained, a plea was filed setting up a title perfected under the statute of limitations for more than twenty years; and with this a stipulation was put in, that in case the plea should be overruled or decided against the defendant, he should have time to answer.   A general replication was put in January 6, 1862.

On the 2d of June, 1863, certain depositions of witnesses were filed, which had been taken since the replication.   The deposition of Theodore Williams appears to have been taken by consent.   The other witnesses were examined in the usual course.

We are not fully informed concerning the exact position of this chancery suit, for the purposes of this record, and we cannot import into this case our knowledge of other cases.   So far as we are now informed in this cause, there is no legal difficulty in the way of receiving those depositions, if they are pertinent.   They were taken under a valid issue.   We need not now consider whether it was one proper to be tried in a partition suit, because the objection cannot be regarded as strictly jurisdictional, and for anything we now know, it may have been waived.   The competency must depend, therefore, on the nature of the testimony itself.

We do not think the testimony of Theodore Williams admissible.   He testifies to a call made by him on Joseph Campau, in 1846, on behalf of the estate of Barnabas

Campau, over which he was one of the executors, to obtain an administration accounting from Joseph Campau of the estates of Toussaint and Denis Campau. Apart from some inferences of the witness himself, there seems to be nothing bearing properly on the title to the land now in question, or any land which is identified. Giving the testimony full credit, it does not touch the present controversy in any way. No admission is sworn to which is pertinent here, and it would be going very far to discover any admission at all. The pecuniary offer made by Williams for the share of the estate he represented in the property of Toussaint and Denis Campau was not accepted, and the discussion is not related, and this lot is not referred to by itself.

So far as the deposition of Louis Campau refers to the facts of family relationship, it is unobjectionable: and so as to the facts of possession, although certainly it is vague and general as to the identity of lands, and is evidently hearsay and improper as to the facts of administration, which if competent should have been proved otherwise.

The deposition of Noah Sutton was received, tending to show that in 1835 he received from Joseph Campau for assessment purposes a list of lands on which this lot was set down to the estate of Denis Campau, Joseph Campau agent. While it is not easy to see the force of this testimony, we are not satisfied its reception was erroneous, although the land never belonged to Denis Campau, so far as the record shows.

There is no principle on which the statements or admissions of Joseph Campau's sons in his lifetime could be received to affect his estate. And we do not think offers in negotiations for compromise can be used as admissions of fact. There is a further difficulty in most of the testimony of this kind, that it does not identify any property.

The remaining errors alleged, so far as they are of

much importance, relate to the rulings in the charge. It is not, as we have several times decided, error to substitute for express requests in the language of counsel equivalent instructions in the language of the court, provided the ground is fully covered and the jury correctly instructed. But counsel have a right to have every important view of the law clearly formulated, either as they draw it up, or in some equally proper form.

There was evidence in the cause which entitled the plaintiffs in error to go to the jury on the theory of an adverse holding prior to 1829. If Joseph Campau so held, prior to the short limitation law of 1829, as to have been subject to an action by his brothers Barnabas and Jacques, or either of them, then as to such claim the bar became complete in 1839. *Lastly v. Cramer*, 2 Doug. (Mich.), 307. The omission to notice this point, which was plainly presented, was probably an oversight, caused by the attention given to some other matters. It was a substantial error.

There is also another point, under the supplementary charge to the jury which is misleading. The court charged that the statute of limitations would not run against an adverse claim, unless held under claim of title. This is incorrect. It is undoubtedly true that under the old doctrine which made a deed void made by one out of possession of lands held adversely, the adverse holding to produce that effect must have been under claim of title. But for the purposes of the statute of limitations an ouster by a trespasser would be as effectual as any other, if suit was not brought within the statutory period. Any intrusion may continue long enough to bar the right of entry. And if in this case the entry was not in right of the heirs of Toussaint Campau, it was not their entry, and was an ouster of which they could at once legally complain. In such case they must lose their rights unless prosecuted within the statutory period.

In considering the authorities which have been cited before us, a considerable number will be found to have no direct bearing on the effect of possession as a foundation of defense under the statute of limitations. A difference is apparent between that peculiar hostile possession which under the old law rendered conveyances executed by parties out of possession void, and that which will in time, if not disturbed, ripen into a title. The former required possession to be taken under color of title. The latter might originate in trespass as well as in any other way. The effect of any adverse possession as amounting to such an ouster as will set the statute of limitations in motion, or authorize a possessory action by a tenant who is excluded is so well settled as not to be open to controversy. *Doe d. Hellings v. Bird,* 11 East, 49; *Clapp v. Bromagham,* 9 Cow., 530; *Culley v. Doe d. Taylerson,* 11 Ad. & El., 1008; *Gordon v. Pearson,* 1 Mass., 323; *Wright v. Saddler,* 20 N. Y., 320; *Willison v. Watkins,* 3 Pet., 43.

The plaintiffs in error, defendants below, asked a series of requests all of which were refused. The first was that plaintiffs below could not recover if there had been a continuous possession from 1820 till suit brought in 1871 by Joseph Campau and his heirs and representatives, giving leases, receiving rents, with the knowledge of the plaintiffs or their ancestors, and without any actual acknowledgment of the rights of said plaintiffs or their ancestors, and without any claim being made by said plaintiffs or their ancestors for a share of the rents and profits.

The 2d was on the basis of a similar possession for over twenty years by Joseph Campau before his death, and claimed that therefrom the jury had a right to presume an ouster by Joseph Campau, or a conveyance, and that plaintiffs could not recover.

The 3d was that a presumption of title arose from possession, and that the burden was on plaintiffs below

to show title in themselves, and the mere fact that an ancestor had a deed fifty years before suit brought was not sufficient to entitle them to recover.

The 4th was that the burden of proof that the ancestors of plaintiffs did not acquiesce in the exclusive possession of Joseph Campau, was on them, and they could not recover if the facts were as consistent with defendant's rights as with theirs.

The 5th was that if Joseph Campau and his heirs held adverse possession more than 20 years before suit, there could be no recovery.

The 6th and 7th referring to actual possession as early as 1834 or 1835, claimed the presumption to be that Joseph Campau took possession in his own right and not for others.

The 8th and 10th referred to the administration proceedings already noticed.

The 9th was that the burden was on plaintiffs to show the possession to have been taken acknowledging title in Barnabas and Jacques Campau.

The 12th, that an ouster or denial since February 16, 1851, must be proved, in order to enable plaintiffs to recover, and if shown to have occurred before that time (which is 20 years before suit brought,) there could be no recovery.

The 13th, that if there had been an actual, open and notorious claim of right and possession for more than 20 years, it was not necessary to consider anything further back, and no recovery could be had against defendants.

The 14th, that if Joseph Campau took possession of the lot as his own at any time before November 5, 1829, and held it openly and notoriously for ten years thereafter, there could be no recovery.

The charge nowhere presents the several views to be taken on the different hypotheses of the requests, and does not direct the jury what to do in regard to most of them one way or the other. These charges as asked, apart from their other bearings, referred to different

periods of time as starting points, and to different statutes of limitation. There was evidence to go to the jury on all these matters, and they should have been presented distinctly. But the general tenor of the charge given is also to be looked at, to see how far it may have operated to aid or obscure the inquiry.

Taken together the charge sets up this theory. It lays it down unequivocally that the presumption is always that a tenant-in-common enters on behalf of all his co-tenants. That no adverse possession could be set up under such an entry without some subsequent change in the character of the possession, made known to the other tenants. But how that character could be changed is not explained, and ˄ the discussion of the question is so mixed up with that of facts which it is said may have some tendency to show what the original possession was meant to be, that we have not been able to determine what the court meant the jury to regard. The assumption is made throughout that the original possession must have been in the common right, and the discussion goes throughout on that theory—the occasional suggestions of a possibility to the contrary not being made in such a way as to be of any use in considering the facts. There is also upon the important element of the quality of the actual possession held without dispute for nearly forty years, a course of reasoning for which there was no basis of testimony. The jury were directed, in considering this possession, to regard the relative amounts of rents and taxes, and told that the action of both parties would be presumably governed by these proportions, which if nearly equal would not lead to any action on either side, but if otherwise would lead the party interested to seek contribution. Upon this subject the record shows there was no evidence whatever, either upon the relation of rents and taxes of the lot here in controversy, or those of the whole estate claimed in this and other lots. When they were told they should look at the "probable

amount of rents and profits," they were left to nothing
but conjecture, and the record further shows an entire
absence of any rendering of accounts on the one side,
or seeking them on the other, whereby the tenants not
in actual possession might be governed in determining
what course their interests required. All instructions
which directed the jury to estimate probabilities from
these relative values were misleading, because no relative
values appeared.

It is not in this case of any importance to determine
how far the presumption exists, inside of the statute of
limitations, that a person who has an undisputed title
to an undivided interest in lands, and is found in pos-
session, must be *prima facie* supposed to have entered
on behalf of his co-tenants, as well as of himself. Since
1846 a conveyance by an excluded owner of lands held
adversely is valid to convey what title he has, and
therefore a suit brought within the statutory period by
such grantee would be maintainable as well as if brought
by the first holder. It can therefore be of no particular
consequence now, in such a suit, whether the first entry
was friendly or hostile. And it is very clear that, what-
ever may be the theoretical presumption in ordinary
cases, it must after such a lapse of time as creates a
bar against all others than co-tenants, be so far depend-
ent on other facts, as to cease to be a simple presump-
tion. It never was a conclusive presumption, and where
there is any testimony in the case affecting it, there is
no longer any propriety in dealing with it as a continu-
ing presumption. It must either stand as a question ·
entirely open on the facts, or else as overcome by other
legal considerations which create a different presumption.

Without attempting to discuss the nature of such
presumptions as may arise from great lapse of time, we
shall confine ourselves to such matters as were deter-
mined by the majority of this court in the case of
*Dubois v. Campau*, 28 Mich., 304, where, without con-

curring in all the legal propositions concerning the nature of presumptions, it was agreed that on such facts as there appeared, the hostile possession must be regarded as having continued long enough to cut off any right of recovery. The facts in the present case are somewhat stronger than in that.

There the land in controversy was originally owned by Denis Campau, who died in 1818, and the jury found possession was taken by Joseph Campau in 1835. The character of the possession there was that which had existed in some one ever since 1818, and did not appear to have been modified by any exclusive improvements.

In the present case all the facts indicative of sole possession exist which were shown there, with some others. The averments of the bill in chancery filed by defendants in error, set back the exclusive possession of Joseph Campau to 1818, and more than fifty years prior to the beginning of this action. It further appears that this lot was built upon in 1834 or 1835 with a double house, and held by Joseph Campau and his lessees ever since, and that he had previously filled it up. It also appears that Jacques and Barnabas Campau both lived in the vicinage, and neither during his lifetime ever set up any claim in this lot, and that no legal steps were taken by their heirs or representatives to establish their claims until many years after their death, when Joseph Campau had become incapable of looking after his own interests, and no possessory action was brought until more than twenty-five years after the deaths of Jacques and Barnabas.

Under all these circumstances, without reference to any presumption of grant or other transfer of title, we think the jury could not rightly find that there had been any possession which was not adverse and exclusive in Joseph Campau, and his heirs, within the statutory period of limitation.

The present English statutes of limitation have removed the difficulties which formerly gave rise to so

much litigation, by providing that the possession of one tenant in common shall not enure to the benefit of the rest. The object of this statute is understood to have been to remove the doubts which made it impossible for any counsel to advise or for any purchaser to know whether it was safe to deal with land titles held for many years by persons who were averred to be tenants in common. The case of *Culley v. Doe d. Taylerson*, 11 Ad. & El., 1008, held this statute to be retrospective, and that under it there was no inquiry to be made concerning the original intent of an exclusive possession— as such a possession for twenty years was in all cases a bar.

Our statutes have not, as yet, removed these controversies, and we are left to dispose of them as heretofore. But while there has always been a disposition in courts to preserve tenants in common from being misled to their prejudice by the conduct of co-tenants in possession, the views of those tribunals which have been tenacious on this subject, are quite well agreed that such a concurrence of facts as is presented here, leaves no room for recovery. *Doe v. Prosser*, 1 Cowp., 217; *Jackson v. Tibbits*, 9 Cow., 246; *Clapp v. Bromagham*, 9 Cow., 530; *Parker v. Prop'r of Locks and Canals*, 3 Metc., 91; *Jackson v. Whitbeck*, 6 Cow., 632; *Rickard v. Rickard*, 13 Pick., 251; *Peaceable v. Read*, 1 East, 568; *Vandyck v. Van Beuren*, 1 Caines, 83; *Bennett v. Clemence*, 6 Allen, 18; *Thomas v. Garvan*, 4 Dev., 223; *Lefavour v. Homan*, 3 Allen, 355; *Willison v. Watkins*, 3 Pet., 43; *Bradstreet v. Huntington*, 5 Pet., 402; *Doe d. Reed v. Taylor*, 5 B. & Ad., 575.

The judgment below must be reversed with costs, and a new trial granted.

The other Justices concurred.