BRIGHAM *v.* REAU.

PHEATT *v.* SAME.

1. Evidence—Title to Land—Parol Testimony.
   Parol evidence that defendants' ancestor deeded the premises in suit to defendants, and an unprobated will of such ancestor making no mention of the property, are not admissible to prove title in defendants.

2. Adverse Possession—Character of Possession.
   Entry under a deed conveying land described as a single tract gives possession coextensive with the deed.

3. Tenants in Common—Ouster—Adverse Possession.
   Where a tenant in common conveys the entirety of the property by warranty deed to bona fide purchasers, who go into possession after an examination of the title, and then by like deed convey to others, who go into possession, there is an ouster of the cotenants sufficient to set the statute of limitations in motion as a basis for title by adverse possession.

4. Same—Evidence.
   Evidence in a suit to quiet title examined, and *held,* to show title by adverse possession.

Appeal from Monroe; Lockwood, J. Submitted January 6, 1905. (Docket No. 24.) Decided March 7, 1905.

Bills by Charles O. Brigham and Sarah C. Pheatt and others against Isadore Reau and others to quiet title to land and to restrain certain actions of ejectment. From decrees for complainants, defendants appeal. Affirmed.

*De Forest Paine,* for complainants.

*Willis Baldwin* and *Thornton Dixon,* for appellants.

McAlvay, J. In these suits complainants filed bills in equity against defendants to quiet title and to restrain an ejectment suit brought by defendant Isadore Reau against the Erie Shooting Club, complainants' tenant, to recover an undivided one-tenth interest in a part of the land in controversy. The cases were heard on pleadings

and proofs taken in open court. The testimony was taken in the Brigham case, and by agreement is accepted as the testimony in the Pheatt case. From decrees entered in both cases in favor of complainants granting the relief prayed for, some of the many defendants have appealed.

The land in litigation is described as the east three-quarters of the north half of the southwest quarter, and the northwest quarter of the southeast quarter, of section 15, township eight south, of range eight east, in Monroe county, containing about 100 acres. The north half of this land is the subject of the suit brought by Pheatt and others, and the south half is the subject of the suit brought by Brigham. John B. Reau is the common grantor and source of the record title of all the parties to these suits. John B. Reau acquired title to this property in 1821 and 1853. He died in 1873, without having parted with the title, as far as appears from the records of Monroe county, although it is claimed by complainants that he deeded the property in dispute to his daughters. Ten children survived him, one of whom died without issue. Alexander Knaggs, through whom title of record comes to complainants, acquired title at least from three of the surviving daughters, amounting to a one-third interest. The defendants, except the Erie Shooting Club, all claim as heirs or through heirs of the common grantor. It will not be necessary to designate the relationship of these numerous descendants to their ancestor, nor the share in the premises claimed by each. Suffice it to say that his heirs emulated with success the example of their sire as to the number of children in each family, and altogether claim to represent an undivided two-thirds of the title to the lands. All defendants have not appealed from the decrees of the court below. Those who claim to represent an undivided 34-63 interest are before this court.

On September 7, 1874, two of the daughters of the common grantor, Victoria and Margaret, and the children of a third daughter, Matilda, then deceased, describing themselves as "heirs of John B. Reau," conveyed by quitclaim to Alexander Knaggs the land in question, de-

scribed as the north part of the east three-quarters of the southwest quarter, and the north part of the northeast quarter of the southeast quarter, of section 15, in township eight south, of range eight east, and also by metes and bounds as follows: "Bounded on the north by the north half of said section 15, east by the east half of the southeast quarter of said section, south by land of Samuel Mulholland, and west by the west quarter of southwest quarter of said section, owned by Francis Rowe, containing ninty-nine acres, more or less;" and said deed contained the following recital: "This deed is given to correct error in deed from the parties of the first part to said party of the second part, dated April 19, 1861, and recorded in the office of register of deeds for said county in Book 62, folio 81." This deed to Knaggs was duly recorded September 19, 1874. It is claimed by complainants that the daughter of John B. Reau, Julia Pettee, through whom defendant Baldwin claims title, joined in the old deed to Knaggs, which was corrected by the deed of September 7, 1874. Knaggs and (second) wife, by warranty deed June 23, 1877, consideration $800, conveyed the north half, or 50 acres, of these premises to Oliver Hall, and on the same date, by warranty deed, consideration $800, conveyed the south half thereof to Charles Dohm. In this deed, by mistake, the whole of the northwest quarter of the southeast quarter of section 15 was conveyed; but Dohm afterwards deeded the north half to Hall. Both of these deeds were promptly recorded. Hall and wife, who claimed to own the fee, by warranty deed, consideration $1,500, on November 28, 1879, conveyed the said north half of these premises to Zebulon C. Pheatt, now deceased.

The complainants in the Pheatt case are the widow and sole heirs of said Zebulon C. Pheatt. Charles Dohm and wife, who claimed to own the fee, by warranty deed, consideration $1,400, conveyed the south half of said premises to Mary L. Brigham December 3, 1879, who, May 15, 1901, by warranty deed, consideration $1, conveyed the same to her husband, Charles O. Brigham, complainant.

Brigham and Pheatt in 1879 went into possession of the lands purchased by them and made large improvements. They built a dyke, cut a ditch, put up a windmill, and planted a peach orchard on the higher land. As to whether this was an absolute possession of the entire premises will be considered later. It is conceded in both cases that the possession of complainants as to all but the N. W. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$ of section 15 has been adverse as to all the defendants, and all claim to the other description is abandoned.

The contention of complainants is that possession of the entire premises by them and their grantors since September 7, 1874, has been adverse, hostile, and exclusive, visible and notorious.

· A claim is also made that the common grantor deeded these premises to his daughters, who conveyed to Alexander Knaggs; and a paper purporting to be a last will and testament of John B. Reau, which disposed of other lands, and not mentioning these, and some other writings, were offered to sustain such claim. For the purpose of showing title such proof was not competent. Other evidence, however, showing how this land was treated by the members of this family, and their understanding as to whom it belonged, was properly considered as bearing upon their subsequent conduct.

Brigham and Pheatt were charter members of the Bay Pointe Shooting Club, organized in March, 1879, and upon its organization leased the 40 acres now in dispute to the club, which at once went into possession and placed signs on the northwest corner and down the west side, reading as follows:

---

LANDS OF THE
BAY POINTE SHOOTING CLUB
TRESPASSERS WILL BE PROSECUTED.
A. J. KEENEY, President.

---

The Erie Shooting Club succeeded to the possession of the Bay Pointe Club, and like signs were posted by it, and it has continued its possession up to the present time.

We do not think that it appears from the record that title to this land was in the daughters of John B. Reau. The bills of complaint do not plant the case upon such title based upon a lost deed, nor is there sufficient evidence to establish a lost instrument conveying the property to them. The cases must be determined, then, upon the nature of the possession of complainants.

Defendants contend that complainants were in possession as tenants in common with them. The answers of all of the defendants to the bills of complaint in both cases are based solely upon the ground of ownership of an interest in the land and joint occupancy of the same with complainants, and claiming that complainants' remedy is at law.

The record shows that Knaggs went into possession under the deed of September 7, 1874, about the beginning of the year 1877, and cultivated part of these premises, and pastured his cattle on the 40 acres in dispute. It is also shown that this deed to him was to correct an error in a deed from the same parties to him, dated April 19, 1861. It does not appear that under the old deed he was ever in actual possession. Knaggs deeded to Dohm and Hall, and they to complainants, so that whether or not the possession of complainants has been exclusive and hostile as to defendants, it has been actual, continuous, and open.

The question is raised as to whether the possession of the complainants and their grantors has extended to the 40 acres in dispute, and whether such possession has been exclusive and hostile. The description in the deed to Knaggs, September 7, 1874, which can be considered good as conveying all of this land, is a description by metes and bounds. The description by sectional subdivisions is indefinite and uncertain. It is as follows:

" The north part of the east three-quarters of the southwest quarter, and the north part of the northeast quarter of the southeast quarter of section 15."

The land could not be surveyed or set off by this description, and no part of the northeast quarter of the northeast quarter of this section is claimed by any of the parties to these suits. The portion in dispute is the northwest quarter of the southeast quarter of section 15. The other description is as follows:

" Bounded on the north by the north half of said section 15, east by the east half of the southeast quarter of said section, south by land of Samuel Mulholland, and west by the west quarter of the southwest quarter of said section, owned by Francis Rowe, containing 99 acres, more or less."

The accompanying diagram of the section, which is a copy of a part of an exhibit in the case, and admitted to be a correct outline of the premises, if used in applying this description, shows that the premises are described

with reasonable certainty, except on the south side, which requires extraneous evidence to show the Samuel Mulholland land. The land came to Knaggs as one description. He occupied and cultivated that part in the southwest quarter of the section. He deeded to Hall and Dohm, using sectional subdivisions to describe the land. These descriptions were used by them two years later, when they deeded to Pheatt and Brigham. They bought the lands for the special purpose of improving them. This was a joint enterprise while it continued. The description in dispute was leased by them in 1879 to the Bay Pointe Shooting Club, which occupied until 1889, when the Erie Shooting Club succeeded by lease to its rights. The possession and occupancy by Knaggs under this deed and the proofs in the case must be considered as a possession and occupancy of the whole premises conveyed to him by one description, and, as far as his possession is concerned, it is not necessary to invoke or discuss the rule of constructive possession. The premises were described in his deed as a single tract, and his entry, when made, gave him possession coextensive with the deed. After the transfers were made to Dohm and Hall, the lands were farmed and pastured until the purchase by Pheatt and Brigham. They exercised possession over the whole property, actually cultivating the larger piece and renting the disputed portion to the shooting clubs. The possession of these clubs under them was of such a nature that no constructive possession need be claimed. If it were necessary, the deed to each of the 50 acres of land, as two distinct parcels, where it appears they had theretofore been used together for farming purposes in raising crops and pasturing cattle, and were adapted to such uses, the entry upon and improving the larger portion would be constructive possession of the other.

The defendants claim that the statute of limitations has not run against them; that the possession of complainants has been their possession. It is probably true that the possession of Knaggs as against his children by

his first wife, who was one of the heirs of John B. Reau, would not be adverse; but from the proofs in this case we hold that Dohm and Hall, being bona fide purchasers by warranty deeds conveying the entirety of the premises to them for value, going into possession as they did after examining the title, under those deeds claiming to be sole owners of the fee, and transferring the title by like deeds to Pheatt and Brigham for valuable consideration after they had been diligent in examining the title, transferred to Pheatt and Brigham a title and possession upon which they might rely and assert as the foundation of an adverse holding against these defendants, and under which the statute would begin to run. We hold that under the circumstances of this case the entry of Pheatt and Brigham in December, 1879, operated as an ouster of all cotenants. They went into possession as strangers to the interests of the other tenants, and under claims which denied their existence and validity. *Campau* v. *Dubois*, 39 Mich. 274; *Sands* v. *Davis*, 40 Mich. 14; *Watkins* v. *Green*, 101 Mich. 493; *Fuller* v. *Swensberg*, 106 Mich. 305.

The statute of limitations having begun to run against defendants as cotenants of complainants at least as early as December, 1879, unless the same has been suspended by actual entry on their part or acknowledgment of their claims by complainants, sufficient time had elapsed prior to the ejectment suit by Isadore Reau and the filing of the bills of complaint in these cases to bar defendants' rights in the premises. The proofs are quite extensive upon this question. As a matter of law, if the acts and conduct of any of these defendants amounted to an entry into possession of these premises, and an occupation thereof jointly with complainants, such entry and possession would suspend the running of the statute, and would inure to the benefit of all tenants in common. A very careful examination of all evidence does not satisfy us that any such entry or joint possession has been shown. The discovery that John B. Reau had not parted with his title was in the nature of a surprise to his sons Christ and Francis B.

They took no affirmative action, and in leasing assumed no responsibility as owners. The sister, Julia B. Pettee, 84 years old at the time of hearing in the court below, had joined in the deed of 1861 to Alexander Knaggs. She testifies that all the lands between the portions given to Christ and Francis B. Reau and the lake belonged to the girls. When the lands were divided it was given to them by their father as their share. The presumption is strong that this was with the knowledge of the whole family. She refused to sell any land included in the transfer to Knaggs, but was induced, upon certain representations made by defendant La Pointe, to transfer part of the land described in the deed to Knaggs to defendant Baldwin. All of these defendants had resided for years contiguous to, or in the vicinity of, this land. All knew of the Pheatt and Brigham occupancy of the larger piece. The occupancy by the shooting clubs for all the years since 1879 by posting of notices around this land and keeping watchmen was open, adverse, and inconsistent with the rights of defendants. We agree with the learned circuit judge that the evidence in the case clearly establishes title in the complainants and their grantors by adverse possession.

The decrees of the court below in both cases are affirmed, with costs.

MOORE, C. J., and GRANT, BLAIR, and HOOKER, JJ., concurred.