No. 16,

## KING v. CARMICHAEL.

REAL ESTATE.—*Adverse Possession.—Color of Title.—Cotenant.—Statute of Limitations.*—In this State, if a cotenant enter into possession of land under color of title, claiming the whole to himself, his possession will be adverse to his cotenant, putting in operation the statute of limitations; and where a cotenant conveys the land held in cotenancy by a deed in severalty purporting to convey title to the whole, the possession of the grantee will be adverse to the other cotenant or cotenants, and will set in operation the statute of limitations.

STATUTE OF LIMITATIONS.—*When Begins to Run.—Legal Disability.— Removal of.—Right of Action.*—The statute of limitations begins to run as to persons under legal disabilities when the right of action accrues; but if it fully run before the disability expires, an action may be brought within two years after the disability is removed.

From the Delaware Circuit Court.

*G. H. Koons*, for appellant.

*W. W. Orr, J. N. Templer* and *E. R. Templer*, for appellee.

DAILEY, J.—This is an action brought by the appellee against the appellant, in the Delaware Circuit Court, to quiet title to certain real estate described in the complaint, and for an injunction. The appellant appeared and filed an answer, in two paragraphs, and a cross-complaint against the appellee in two paragraphs. The appellee filed her reply to the second paragraph of the appellant's answer, in four paragraphs, and her answer to the cross-complaint of appellant, in four paragraphs. The replies are addressed to the second paragraph of the appellant's answer, and are numbered 1, 2, 3, and 4. The paragraphs of answer are addressed as follows, viz: The first, third, and fourth to both paragraphs of the cross-complaint, and they are numbered 5, 7, and 8; the

second is addressed to the first paragraph of the cross-complaint, and is numbered paragraph six.

The appellant demurred to the second, third, and fourth paragraphs of the reply, and also to the second, third, and fourth paragraphs of answer to the cross-complaint. The court overruled all these demurrers. The appellant replied to the second, third, and fourth paragraphs of answer to the cross-complaint, by the general issue. There was a trial by the court, and finding and judgment for the appellee. The appellant filed and submitted his motion and written reasons for a new trial, which, at the next term, was refused, and the court rendered a judgment and decree for the appellee, from which the appellant prosecutes this appeal.

Errors are assigned upon the overruling of appellant's demurrer to the second, third, and fourth paragraphs of reply, also upon the overruling of the demurrer to the second, third, and fourth paragraphs of answer to the cross-complaint, and upon the overruling of appellant's motion for a new trial.

Appellant has not brought the evidence before the court, and has not submitted any argument in support of his assignment of error upon the overruling of his motion for a new trial, and we assume that the alleged error is waived. *Louisville, etc., Ferry Co.*, v. *Nolan*, 135 Ind. 60; Elliott's App. Proced., section 444, note 3, and authorities there cited.

We will consider the errors assigned upon the overruling of the appellant's demurrers to the second, third, and fourth paragraphs each of the replication and answer to the cross-complaint. These are so similar and so intimately connected in principle and theory, that, as a matter of convenience, we will view them together.

The second reply to the second paragraph of the answer alleges, in substance, that one Lydia J. King, wife

of Lemuel King, died intestate, in Delaware county, Indiana, on March 23, 1865, seized in fee simple, of the real estate described in the second paragraph of the answer, leaving surviving her said Lemuel King and a son, Francis J. King, as her only heirs at law, to whom said premises descended in fee simple; that afterwards, on the 8th day of December, 1865, said Lemuel, believing that he had inherited one equal half part of said real estate from his said deceased wife, sold and, by warranty deed of that date, conveyed one equal half thereof, with other real estate, to Thomas Tate, for $937.50, the then full cash value thereof, then paid to and received by him from Thomas Tate, and then and there, under and pursuant to said deed, the said Lemuel King put the said Tate into full possession of the real estate so sold, conveyed, and purchased, and the said Tate then and there, on said 8th day of December, 1865, took and ever since, by himself and his grantees, has held, and plaintiff, as a remote grantee of said Tate, holds full, open, notorious, and exclusive adverse possession of the same under claim of ownership thereof; that afterwards, on January 8th, 1866, Lemuel King was duly appointed, gave bond and qualified as guardian of appellant, and as such guardian made his sworn petition to the court for an order of sale of his ward's real estate, including the remaining undivided one-half of that mentioned in the second answer, wherein, amongst other things, he stated that said ward was then the owner of certain described real estate, including said undivided half aforesaid, which real estate descended to said ward from his deceased mother, who died on said 23d day of March, 1865, and the other half thereof vested thereby in said petitioner as her widower, and, on an order of sale made thereon by the court, he sold said undivided half of said real estate belonging to said ward, to said Tate, at private sale, for $915, that

King *v.* Carmichael.

being more than the appraised value, and the highest and best price he could obtain for said ward's said real estate; and upon report and confirmation of said sale, and the court's order to that effect, he conveyed said ward's said realty, so sold, to the said Tate, in fee simple, by guardian's deed, and under said deed put said purchaser into possession of said real estate as the owner thereof, and thereupon the said Tate took and, by himself and his grantees, has ever since held, and the plaintiff now holds, the full, open, notorious and exclusive adverse possession thereof, under claim of ownership; that the said Thomas Tate and his grantees, including the plaintiff, have held open, exclusive, adverse possession of said premises described in said answer and in the plaintiff's complaint, under claim of ownership, for more than twenty years; that the defendant—appellant herein—became twenty-one years of age on the 19th day of June, 1882, more than eight years prior to the commencement of this suit, so she says the defendant ought not to have and maintain his second answer.

The third reply to the second answer alleges that the plaintiff now holds, and, with her grantors, mediate and immediate, has had and held full, exclusive, and open adverse possession of all of the real estate described in said answer and in her complaint, for more than twenty years, under claim of ownership thereof, and that the defendant did not, within two years following the time when he attained the age of twenty-one years, assert any claim to any part of said real estate, in any manner whatever.

The fourth reply to the second answer alleges that the supposed claim of the defendant to one-sixth part of plaintiff's real estate described in her complaint and said answer, accrued more than twenty years before the commencement of this suit, and the defendant became twen-

ty-one years of age more than two years before the commencement of this action.

Briefly stated, the second reply sets up title by prescription in the appellee, and the third and fourth plead the statue of limitations of twenty years. The questions presented by these paragraphs are by no means free from difficulty, nor are we aided in their solution by the decisions of the courts of other States, amongst which there is an irreconcilable conflict. The more we examine them the more incongruous they seem. It is the general rule that the possession of one tenant in common is the possession of all, and for the common benefit of all, and when this condition of things obtains, the statute of limitations does not ordinarily run against any of them. In this State, the rule is so far modified, we think, that if one enter under color of title, claiming the whole to himself, his possession will be adverse to his cotenant.

In *English* v. *Powell*, 119 Ind. 93–95, it is said: "That one tenant in common can oust his cotenant and acquire title as against him by prescription, we have no doubt. Twenty years occupancy, under color and claim of title to the whole estate, by one tenant in common, will give to the tenant so occupying title to the whole, as completely as if there had been no cotenancy. Such an occupancy constitutes an ouster, and its continuance for twenty years gives title."

We also cite Freeman on Cotenancy, etc., section 223: "When one tenant in common is in possession of the whole estate, claiming under a deed purporting to convey the entire estate, he will be deemed to have ousted his cotenants." *Nelson* v. *Davis*, 35 Ind. 474; *Wright* v. *Kleyla*, 104 Ind. 223.

It is insisted by counsel for the appellant, that to effect an ouster by a cotenant, there must be an actual,

continuous, notorious, distinct, and visible possession; such that a knowledge of its existence must be brought home to the cotenant, and this seems to be the law. 1 Am. and Eng. Encyc. of Law, 233, and notes; *Manchester* v. *Doddridge*, 3 Ind. 360; *Bowen* v. *Preston*, 48 Ind. 367 (377); *Nicholson* v. *Caress*, 76 Ind. 24; *Sanford* v. *Tucker*, 54 Ind. 219; *Jenkins* v. *Dalton*, 27 Ind. 78.

It occurs to us that the second paragraph of the reply, assailed by the appellant, conforms strictly to this rule by showing that the appellee, and those under whom she claims, have been in the full, open, notorious and exclusive adverse possession of the premises in dispute, under claim of ownership thereof, ever since December, 1865. Such facts, if proved by satisfactory evidence, would constitute an ouster.

It is averred, in this reply, among other things, that the entry and possession were under deeds purporting to convey the entire title, and that the purchaser from Lemuel King, as widower, and said King as guardian of the appellant, paid the then full value of the premises so purchased.

In Freeman on Cotenancy, section 224, the author says:   "The character of the entry may be inferred from the conveyance under which it is made, as well as established by the direct declarations of the party making it.   The entry of a person under a conveyance which purports to convey a moiety may well be presumed to be simply as claimant of such moiety.  But when the conveyance purports to dispose of the whole, * * should not the entry be, of itself, sufficient evidence that the grantee intended thereby to assert all the rights with which his grantor has assumed the authority to invest him?   In other words, is not an entry under a conveyance which purports to convey the entirety equivalent to an express declaration on the part of the grantee that he enters

claiming the whole to himself; and is it not, therefore, such a disseizin as sets the statute of limitations in motion in favor of such grantee?''

In *Prescott* v. *Nevers*, 4 Mason C. C. 326–330, cited by the author, Justice Story, said:   ''I take the principle of law to be clear, that where a person enters into land under a claim of title thereto by a recorded deed, his entry and possession are referred to such title; and that he is deemed to have a seizin of the land coextensive with the boundaries stated in his deed, where there is no adverse possession of any part of the land so described, in any other person.''

So, in *Jackson* v. *Smith*, 13 Johns. (N. Y.) 411, where a conveyance had been made for a whole lot, but it appeared that the grantor, instead of being entitled to the whole property as sole heir, *as was supposed at the making of the* deed, was only one of the heirs, the court held that this did not change the entry nor control the possession of the grantee, so as to render it an entry and possession as a tenant in common.

In *Culler* v. *Motzer*, 13 S. & R. (Pa.) 358, the broad proposition is maintained that the possession of land by a purchaser under a deed of an entire lot, is adverse to the rightful owner, though tenant in common with the grantor, because the entry is under an adverse title and not as a cotenant.   The sale, in such case, of the whole tract, is in effect such assertion of claim to the whole as can not be mistaken, because it is wholly incompatible with an admission that the other tenant in common has any right whatever.   Acts of ownership on the part of such grantee must necessarily be adverse to any other part owner.

''His possession, taken under such deed and continuing the requisite period of time, creates in him a complete title in severalty, by virtue of the statute of limi-

tations.'' *Thomas* v. *Pickering*, 13 Me. 337; *Marcy* v. *Marcy*, 6 Met. (Mass.) 360, 371; *Wright* v. *Saddler*, 20 N. Y. 320 (329).

Although Lemuel King and the appellant became tenants in common from and after the death of Lydia J. King, from whom both derived title, it does not necessarily follow, upon principle or upon authority, that this relation continued and involved Thomas Tate and subsequent grantees. A deed from one of several cotenants, to a person in exclusive adverse possession, conveying absolutely all the property, does not make the grantee a cotenant with the other holders of the legal title, and so render his possession not adverse. *Frick* v. *Sinon*, 75 Cal. 337; *Irey* v. *Markey*, 132 Ind. 546, 32 N. E. Rep. 309.

In the last case, the court said: ''Assuming that the deed was void, possession having been taken under it, it was sufficient to give color of title as against the grantors, and to set in motion the statute of limitations.''

A vendee in fee derives his title from the vendor, but his title, though derivative, is adverse to that of the vendor. He enters and holds possession for himself, and not for the vendor. *Blight's Lessee* v. *Rochester*, 7 Wheat. 535 (547, 548); *Society, etc.,* v. *Town of Pawlett, etc.*, 4 Pet. U. S. 480, S. C. Book 7, L. C. P. Co. 927 (937), marginal p. 507.

A *bona fide* purchaser holds adversely to all the world. He may disclaim the title under which he entered and set up any other title and any other defense alike against his grantor and against others. *Den on Demise of Croxall* v. *Sherrerd*, Book 18, Lawyers' Co-op., etc., reprint U. S. Sup. Ct. R. 572 (579); *Watkins* v. *Holman*, 16 Pet. *25; *Jackson* v. *Huntington*, 5 Pet. 402; *Willison*

v. *Watkins*, 3 Pet. 43; *Voorhees* v. *White's Heirs*, 2 Marsh. 26; *Winlock* v. *Hardy*, 4 Lit. 272.

It has been held that "Where one has knowledge of facts sufficient to put him upon inquiry, he is chargeable with knowledge of all matters which he could have learned with reasonable inquiry." *Kuhns* v. *Gates*, 92 Ind. 70.

In (B. Monroe) 52 Ky. Rep. 436, the court held that where one of two joint tenants sells and conveys a tract of land and gives possession, the grantee's title and possession is adverse to that of the other joint tenant, and if the grantee hold a sufficient length of time by a continued open renunciation of the title of his cotenant, he may acquire title.

Buswell on Lim., etc., section 24, p. 37, states it to be a general rule of the civil law that prescription begins to run from the time when the creditor acquires a full and perfect right to prosecute his demand. The period of limitation is to be computed from the time at which the creditor may legally prosecute his action. *Jacobs* v. *Graham*, 1 Blackf. 392; *Wright* v. *Tichenor*, 104 Ind. 185.

The statute of limitations begins to run, as to persons under legal disabilities, when the action accrues, but if it has fully run before the disability expires, an action may be brought within the time limited after the disability is removed. *Barnett* v. *Harshbarger, Admr.*, 105 Ind. 410; *Davidson* v. *Bates*, 111 Ind. 391; *Lehman* v. *Scott*, 113 Ind. 76; *Royse* v. *Turnbaugh*, 117 Ind. 539; *Wright* v. *Kleyla*, 104 Ind. 223; *Bauman* v. *Grubbs*, 26 Ind. 419 (421); *Herff* v. *Griggs*, 121 Ind. 471 (476); *Sims* v. *Gay*, 109 Ind. 501; *Walker* v. *Hill*, 111 Ind. 223.

The phrase, "under legal disabilities," includes infants. R. S. 1881, section 296; *Bauman* v. *Grubbs, supra.*

The statute begins to run against infants precisely as against adults, when the right of action has accrued and is complete. *Davidson* v. *Bates, supra.*

The only effect of appellant's disability of infancy was to give him, if the full limitation had run during his disability, two years under section 296, R. S. 1881, after he had attained the age of twenty-one years, within which he might sue. *Herff* v. *Griggs, supra,* and numerous cases there cited.

Under the Revised Statutes of 1881, section 255, appellant, although an infant, could have sued as soon as Tate was put in possession under his first deed. Appellant was five years, one month and sixteen days old when Tate took possession under the guardian's deed.

This suit was commenced August 25th, 1890, exactly twenty-four years and nineteen days after appellant's right of action accrued against the grantee. Appellant became twenty-one years of age June 19th, 1882, exactly eight years, two months and six days before this suit was commenced, and eight years, three months and one day before he filed his answer and cross-complaint in this action, and this was the first claim made by him for his one-sixth interest in the real estate in controversy. He has slept upon his rights, and under the statute of limitations, which is one of repose, he can not now recover.

In view of the authorities cited, the infant was not entitled to notice in order to set the statute in motion. The undisturbed possession, as shown by the reply, raises the presumption of notice and constitutes a complete bar when the period has elapsed. What we have said in considering the demurrer to the second paragraph of the reply, applies equally well to all the paragraphs of the replies and answers demurred to, so far as the questions of the statutes of limitations, ouster, notice, and infancy

are involved, and we think the court below did not err in any of its rulings of which complaint is made.

Judgment affirmed.

Filed Nov. 27, 1893.