[No. 9332.   Department Two.   September 14, 1911.]

LOUISE HUSTED CHURCH, *Appellant*, v. THE STATE OF
WASHINGTON, *Respondent*.[1]

TENANCY IN COMMON—OUSTER—DISSEIZIN—ADVERSE POSSESSION—
WATERS AND WATER COURSES—TERMINATION.   Where one tenant in
common of the right to use certain springs conveyed the whole title
by warranty deed to a stranger, who immediately took exclusive,
open, and notorious possession, and maintained the same for the
statutory period without any adverse use of the springs being made
or claimed by the other cotenants, the right of the cotenants to use
the springs is terminated by disseizin, ouster, abandonment, nonuser,
and adverse possession.

WATERS AND WATER COURSES—ACTIONS—EVIDENCE.   In an action
to establish the right to use springs, claimed by defendant through
adverse possession, plaintiff's evidence of an intention not to aban-
don the springs is inadmissible where he did not succeed to his title
until after defendant's title had ripened.

Appeal from a judgment of the superior court for Thurs-
ton county, Mitchell, J., entered September 8, 1910, in favor
of the defendant, after a trial on the merits before the court
without a jury, in an action to establish right to the posses-
sion and use of water from certain springs.   Affirmed.

*John P. Hartman* and *E. R. York*, for appellant.

*W. P. Bell, Attorney General*, and *Geo. A. Lee, Assistant*,
for respondent.

CROW, J.—This action was commenced by Louise Husted
Church against the state of Washington, to establish her
right to use, in common with defendant, certain water flowing
from springs located upon defendant's land, which land is
now occupied by the Western Washington Hospital for the
Insane; and also to establish plaintiff's right to enter defend-
ant's land and install pipes thereon to conduct the water.   A
final decree was entered, confirming defendant's exclusive title

[1]Reported in 117 Pac. 711.

to the springs and enjoining the plaintiff from interfering therewith. The plaintiff has appealed.

On July 22, 1872, A. H. Adams and wife, Frank Clark and wife, George W. Sloan and wife, and Edward Lander, who jointly owned 320 acres of land in Pierce county, partitioned it into three separate tracts. The north tract, containing 7-16 of the land, was conveyed in severalty to Adams and wife. The next or middle tract, containing 5-16 of the land, was conveyed in severalty to Clark and wife, and the south tract, containing 4-16 of the land, was conveyed to Sloan and wife and Lander. Two springs are located on the northeast corner of the northerly tract partitioned to Adams and wife. The partition deed contained the following stipulation:

"And it is further covenanted, granted, concluded and agreed by and between the said parties hereto that after the signing and execution of this deed of partition, the said A. H. Adams and Esther T., his wife, by their attorney, Frank Clark, shall execute to the said other parties hereto an instrument of writing, giving and granting to them and to their heirs and assigns, the use in common of certain springs and water situate in the northeast corner of the above described [Adams] tract."

On the same day, Adams and wife executed and delivered to Frank Clark and wife, George W. Sloan and wife, and to Edward Lander, their deed, which contained the following transfer and covenant:

"Now, therefore, in consideration thereof and in pursuance of the said agreement contained in said partition deed the said first parties, Adams and wife, hereto by their said attorney in fact, Frank Clark, do hereby grant and convey to the said parties of the second part, their heirs and assigns, the use in common forever of all those certain springs of water situate in the N. E. corner of said described tract of land.

"To have and to hold unto said second parties, their heirs and assigns forever, and the said first parties for themselves, their heirs, executors, or administrators, do hereby covenant to and with the said second parties, their heirs and assigns, that they shall and may from time to time and at all times

hereafter well and peaceably have, hold, and possess and enjoy the said springs of water hereinbefore described in common with the said first parties, their heirs and assigns forever, and at all times have the right to enter upon the lands where the same are situate, for the purpose of digging ditches and laying pipes through said lands or placing any other appliances for conveying said water wherever wanted for use, and for all purposes connected with the complete enjoyment of said use of the said springs of water forever."

This deed was recorded December 19, 1879. On July 23, 1872, Adams and wife, by warranty deed, conveyed to one Edward G. Tilton the easterly portion of the northerly tract, the same being the portion on which the springs are located. This deed was recorded on the date of its execution. On March 16, 1886, by a like warranty deed which was recorded April 12, 1886, Tilton and wife conveyed the same land to the "trustees for the hospital for the insane of Washington Territory." The remaining portion of the northerly or Adams tract was, on July 23, 1872, conveyed by Adams and wife to Anthony Hyde, trustee, who on May 10, 1886, conveyed the same to the territory of Washington. On December 17, 1879, Frank Clark and wife, by warranty deed, conveyed to the territory of Washington the central tract, together with their interest in and to the springs. It will thus be seen that the territory, under the foregoing deeds, acquired the northerly and middle tracts, formerly partitioned to Adams and wife and Clark and wife. It has since claimed, and now claims, the exclusive right to the springs and all water running therefrom. The territory, succeeded by the state, took possession under these deeds, located, and has since maintained, and now maintains, the Western Washington Hospital for the Insane on the lands thereby conveyed. It inclosed the springs with a substantial fence which has since been maintained. No one other than the territory and state has used any water from the springs. The territory, about the year 1886, commenced the use of a portion of the water for hospital purposes, and all of the remainder was then used

by it for power purposes to operate a pumping plant. This exclusive use of all water running from the springs continued for about six years, when a steam pumping plant was installed, and the state has since used about one-half of the water for the hospital.

The appellant acquired title to about sixty-five acres of the southerly or Lander and Sloan tract, as follows: On July 17, 1890, Edward Lander, by warranty deed, conveyed the same to Thomas Riggs, and on July 29, 1902, Thomas Riggs and wife, by warranty deed, conveyed to appellant. In neither of these deeds was the water right mentioned, nor do they purport to convey the same. In March, 1906, Lander executed a quitclaim deed conveying to Catherine Riggs, wife of Thomas Riggs, any interest he might have in and to the springs, and on April 18, 1906, Riggs and wife, by a like quitclaim deed, conveyed the same to appellant. Appellant has not, nor have any of her grantors, at any time made use of the water. In 1907 she was preparing plans to enter upon respondent's land and conduct the water to her land, when her right to do so was denied by respondent. Thereupon she commenced this action.

Appellant insists the trial court erred in excluding evidence as to her intention relative to use or abandonment of the water. The testimony offered and excluded was that of appellant and her husband, who acted as her agent, the land being her separate property. There is no claim that she made her intentions known to respondent prior to the year 1907. Evidence admitted shows without dispute that nothing was done by her grantors, Lander, Sloan, or Riggs, to obtain possession or use the springs. Appellant stated it had been her intention not to abandon the springs. Conceding the absolute verity of this statement, she could have entertained no such intention prior to her alleged purchase of the water right in 1906, at which time respondent's defenses, if valid, had been perfected as against her grantors. No prejudicial error was committed in excluding evidence.

Appellant insists she, as successor in interest to Lander, became a tenant in common with respondent in and to the right to use water from the springs; that she also became entitled to an easement securing to her the privilege of entering respondent's land and installing pipes to conduct the water; that these rights constitute an easement which, having originated in grant, cannot be determined by nonuser alone; that no statute of limitation will terminate her easement; that respondent's possession as her tenant in common has at all times been her possession; that she has never been ousted; that respondent uses not to exceed one-half of the water; and that she is now entitled to its joint use and enjoyment as respondent's cotenant. Respondent insists appellant never was its cotenant; that neither she nor her grantees ever had any definite easement over intervening lands; that the alleged water right and easement, if they ever existed, have long since been terminated by abandonment, nonuser, ouster, adverse possession, and the statute of limitations; and that respondent's title to the springs and all water flowing therefrom is absolute.

We find it unnecessary to determine whether appellant's and respondent's respective grantors were originally tenants in common, but for the purposes of this case will assume they were, without so deciding. If they were, the alleged rights of appellant and her grantors as such tenants in common have been long since terminated by abandonment, nonuser, ouster, and adverse possession. When Adams and wife, after partition, conveyed to Tilton that portion of the land on which the springs were located, they conveyed the premises without reservation. Their warranty deed mentioned no existing water right or easement in third parties, nor did it except the same from its covenants of warranty. Tilton and wife, in the same manner, conveyed to respondent. It took immediate possession, fenced the springs, and for six years used all the water for hospital and power purposes. Its possession was peaceable, continuous, open, exclusive, notorious, and ad-

verse to appellant's grantors.   In the absence of additional
facts or circumstances sufficient to show an ouster, exclusive
possession by one tenant is not adverse as against his co-
tenant, but is ordinarily the possession of both.   Mere posses-
sion by one cotenant alone will not ripen into title by adverse
possession, even though it be continued without interruption
for the period of the statute of limitations.   There must be
an ouster followed by adverse possession for the statutory
period to determine the estate of the tenant not in posses-
sion.   Has there been an ouster in this action?   If there has,
the statute of limitations has run and respondent has ac-
quired an absolute title by the succeeding and continued ad-
verse possession. 1 Am. & Eng. Ency. Law (2d ed.), p. 801-
806, and cases cited.

To show an ouster of one tenant in common by his cotenant
requires stronger and more convincing evidence than is neces-
sary to sustain an ordinary claim of adverse possession.   We
think, however, the evidence of ouster of appellant's grantors
by respondent and its grantors is clear and convincing.   This
is our conclusion, although we recognize the well-established
rule that, when adverse possession is relied upon as an ouster,
either the tenant out of possession must have actual notice
of the adverse holding, or the hostile character of the pos-
session must be so manifest, open, and notorious that notice on
his part will be presumed.

When Adams and wife in 1872 conveyed to Tilton the land
on which the springs are located, and Tilton and wife in
1886 conveyed to respondent, theretofore a stranger to the
title, it took immediate and exclusive possession, and has
since enjoyed the exclusive use and possession of the lands
and the springs located thereon, acquiring such possession
and holding the same under warranty deeds which purported
to convey an absolute and complete fee simple title.   Appel-
lant's grantors were never in possession.   At no time did they
use or attempt to use water from the springs.   They conveyed
the south tract by warranty deeds which made no mention of

any water rights. Appellant at first took title thereunder in the year 1902. Some time later during the year 1904, appellant sold and conveyed a portion of her land to respondent. Her attention seems to have been then directed to this ancient water claim. As a result she, in the year 1906, procured quitclaim deeds to be executed from Lander to Catherine Riggs and from Mrs. Riggs and her husband to herself. Thereafter she, for the first time, asserted her alleged claim as tenant in common, and upon its denial by respondent, commenced this action. When one cotenant conveys the entire estate to a third party who has theretofore been an entire stranger to the title, and the grantee takes possession claiming exclusive title, such conveyance and possession operate as a disseizin of the other cotenants and convert the possession of the grantee into an adverse possession. In *Rutter v. Small*, 68 Md. 133, 11 Atl. 698, the court said:

"Now we take the law to be well settled, that where one tenant in common conveys the whole estate in fee and his grantee enters and claims and holds the exclusive possession, the conveyance and entry and possession must be deemed adverse to the title and possession of the cotenant, and amount to a disseizin, and such possession if continued for twenty years will bar the title of such cotenant."

In *Hanson v. Ingwaldson*, 77 Minn. 533, 80 N. W. 702, 77 Am. St. 692, the court said:

"This brings us to the question whether the defendant has acquired title to the land in question by adverse possession. He acquired, by the deed under which he entered into possession of the land, the life estate of the widow Hanson in an undivided one-third thereof; also an undivided interest in fee —the plaintiffs concede that it was undivided one-half. He was therefore a tenant in common with the plaintiffs, who claim that his possession was not adverse as to them, because the possession of one tenant in common is not to be presumed to be adverse to his cotenants. Such is the general rule; but where one tenant in common attempts to convey the whole estate in fee, by warranty deed, and his grantee records his deed, and by virtue thereof enters upon the estate, and claims

and holds exclusive possession of the whole thereof, the entry and claim must be deemed adverse to the title and possession of his cotenant, and amount to a disseizin."

See, also, *Brigham v. Reau,* 139 Mich. 256, 102 N. W. 845; *King v. Carmichael,* 136 Ind. 20, 35 N. E. 509, 43 Am. St. 303; *Riggs v. Fuller,* 54 Ala. 141; *Jackson v. Pittsburgh etc. R. Co.,* 140 Ind. 241, 39 N. E. 663, 49 Am. St. 192; *Street v. Collier,* 118 Ga. 470, 45 S. E. 294; *Lloyd v. Mills,* 68 W. Va. 241, 69 S. E. 1094.

The cases announcing this doctrine rest upon the principle that the conveyance in fee, and entry and possession thereunder by one theretofore a stranger to the title, are notorious and unequivocal acts of complete ownership, of such a character as to give notice to the other cotenants that the entry and possession are hostile and adverse to their title. The judgment is affirmed.

DUNBAR, C. J., ELLIS, MORRIS, and CHADWICK, JJ., concur.