[No. 23-40255-3.  Division Three.  October 21, 1969.]

PERSHING W. NICHOLAS *et al., Respondents,* v. ALBERTA
COUSINS *et al., Appellants.*

*J. D. McMannis,* for appellants.

*Hickman & Faris* and *Lawrence E. Hickman,* for respondents.

MUNSON, J.—In an action to quiet title, the trial court granted motion for summary judgment and entered a decree quieting plaintiffs' title. Defendants Cousins and Nicholas appeal.

The parties agree there is no conflicting evidence as to the material facts. The court has only to apply the law to those facts.

B. F. and Lulu Z. Nicholas had three children: Alberta Cousins and Harold Nicholas, the oldest of the three, hereafter referred to as though they were the only defendants; and Percy W. Nicholas, the youngest child, hereafter referred to as though he was the sole plaintiff.

B. F. Nicholas was in the business of purchasing ailing retail stores, operating them for a time, increasing their ability to produce revenue and then selling them. Defendant Harold Nicholas assisted him. During the time of the exchange of deeds, *infra,* this business, because of the economic depression of that era, became onerous. The nature of the business caused the Nicholases to live in various parts of Eastern Washington.

Prior to October 22, 1931, B. F. and Lulu Z. Nicholas acquired property located in Whitman County, Washington, and here in issue. On October 22, 1931, they deeded that property to a brother of B. F. Nicholas, one George Nicholas, a bachelor. This deed was recorded November 5, 1931, in Whitman County. On October 31, 1931, George Nicholas, by quitclaim deed, conveyed the property to Lulu Z. Nicholas without stating whether or not it was to be her separate property. This deed was not recorded until October 21, 1932, some 7 months after the death of B. F. Nicholas, which occurred on March 7, 1932.

The probate of the B. F. Nicholas estate began shortly after his death, but the real estate in question was not inventoried. His will made specific bequests to his wife Lulu, and placed the residue of this estate in trust for her benefit and that of the children. Under the terms of the

testamentary trust, Lulu had the power to invade the corpus. The trust was to terminate within a reasonable time following her death or remarriage and the residue, if any, was to be distributed among the three children—share and share alike. Prior to 1939 the trust was exhausted and terminated. After the death of B. F. Nicholas, Lulu Z. Nicholas treated the instant property as her separate property.

On March 11, 1951, Lulu Z. Nicholas died, leaving a will in which she proclaimed her children, the defendants, had been taken care of during her lifetime and left all of her property to her youngest son, the plaintiff. Her will was probated, the real estate in question inventoried in her estate and subsequently distributed to plaintiff by decree of distribution. Affidavits in the record reflect that during the probate of Lulu's will the question of her competency was raised by defendants. As a result of negotiations on this issue, plaintiff paid $6,000 to defendants. No matters related to this lawsuit were raised.

After receiving the property by decree of distribution, plaintiff took possession. He took all rents, issues and profits from the property without accounting to anyone and paid all taxes from the time of possession. All parties agree they were unaware of any possible interests of the defendants in the property until a title company refused to insure the title on a proposed transaction by plaintiff.

Plaintiff brings this action, claiming title by adverse possession under the provisions of RCW 7.28.070. Defendants claim they became cotenants with the plaintiff upon the death of B. F. Nicholas and assert that plaintiff cannot claim adverse possession as against them. To the contrary, plaintiff claims the property was the separate property of Lulu Z. Nicholas, was not included in the trust and as such was not distributed to any of the parties, nor the mother; hence, cotenancy did not exist.

It is unnecessary to delineate the rights under the trust. We shall assume the mother and children became tenants in common upon the death of B. F. Nicholas.

RCW 7.28.070 states:

> Every person in actual, open and notorious possession of lands or tenements under claim and color of title, made in good faith, and who shall for seven successive years continue in possession, and shall also during said time pay all taxes legally assessed on such lands or tenements, shall be held and adjudged to be the legal owner of said lands or tenements, to the extent and according to the purport of his or her paper title. All persons holding under such possession, by purchase, devise or descent, before said seven years shall have expired, and who shall continue such possession and continue to pay the taxes as aforesaid, so as to complete the possession and payment of taxes for the term aforesaid, shall be entitled to the benefit of this section.

One of defendants' claims of error is that plaintiff did not have color of title under the decree of distribution because such a decree cannot create a title where none previously existed. *Mezere v. Flory,* 26 Wn.2d 274, 173 P.2d 776 (1946); *Smith v. McLaren,* 58 Wn.2d 907, 365 P.2d 331 (1961). However, *McCoy v. Lowrie,* 42 Wn.2d 24, 29, 253 P.2d 415 (1953) defining color of title under RCW 7.28.080, which concerns the adverse possession of vacant and occupied land, states:

> An instrument which actually passes title does not provide color of title, as specified in RCW 7.28.080, because the term "color of title," as we have defined it, means "that which is a semblance or appearance of title, but is not title in fact nor in law" (*Bassett v. Spokane,* 98 Wash. 654, 168 Pac. 478 (1917)) and implies that a valid title has not passed. [Citing cases.]

*Schmitz v. Klee,* 103 Wash. 9, 16, 173 P. 1026 (1918) quoted with approval in *Scramlin v. Warner,* 69 Wn.2d 6, 10, 416 P.2d 699 (1966) states:

> An instrument, in order to operate as color of title, must purport to convey title to the grantee or to those with whom he is in privity, and must describe and purport to convey the land in controversy; it cannot be aided by parol evidence.

See also 3 Am. Jur. 2d *Adverse Possession,* § 178, 270; 82 A.L.R.2d 266, § 63.

■ The will of Lulu Z. Nicholas having been admitted to probate, an inventory filed containing a description of the instant property, and that property awarded to the plaintiff by decree of distribution, meets the test for color of title as required by RCW 7.28.070.

There is no question that the plaintiff has been in possession for seven successive years and during said time paid all taxes legally assessed upon the land.

Next, defendants raise the question of whether the possession of land can ripen to title against tenants in common who have no knowledge or notice of their ownership interest. As stated previously, none of the parties to this action were aware of the cotenancy relationship, which this court has assumed, until shortly before this suit was instituted.

The general rule, and presumption, is that the possession of one tenant in common is the possession of all cotenants and inures to the benefit of all. To establish title in one cotenant as against the others, by adverse possession, there must be such outward acts of exclusive ownership of such an unequivocal character as to impart notice to the cotenant that adverse possession is intended to be asserted against them. Possession of land held under common title by one tenant in common does not imply hostility as does possession by a stranger to the title. Stronger evidence is required to show adverse possession by a tenant in common than by a stranger, but the evidence need not differ in kind. Actual verbal or written notice is not necessary to start the statute running in such a case. If there are outward acts of exclusive ownership by a tenant in possession, of such a nature as to preclude the idea of a joint ownership brought home to the cotenant, or so open and public a character that a reasonable man would discover it, it is sufficient. *Fritch v. Fritch*, 53 Wn.2d 496, 503, 335 P.2d 43 (1959); *Church v. State*, 65 Wash. 50, 55, 117 P. 711 (1911); *Stone v. Marshall*, 52 Wash. 375, 379, 100 P. 858 (1909); *Cox v. Tompkinson*, 39 Wash. 70, 75, 80 P. 1005 (1905); *Mack v. Linge*, 254 Iowa 963, 119 N.W.2d 897 (1963); *Watkins v. Zeigler*, 147 So. 2d 435 (La. App. 1962); *West v.*

*Evans,* 29 Cal. 2d 414, 175 P.2d 219, 221 (1946); *Livingston v. Livingston,* 210 Ala. 420, 98 So. 281 (1923); 82 A.L.R.2d 5, *et. seq.*

■ This general rule in Washington is enunciated only for the situation where both the cotenant in possession and the cotenants out of possession are aware or held to be aware of the cotenancy at the time of entry onto the land, or where the latter subsequently learns what is known by the former. *Cox v. Tompkinson, supra; Hicks v. Hicks,* 69 Wash. 627, 125 P. 945 (1912); *McKnight v. Basilides,* 19 Wn.2d 391, 143 P.2d 307 (1943); *Shull v. Shepherd,* 63 Wn.2d 503, 387 P.2d 767 (1963). However, this is not the case at hand. As the trial court found, neither the plaintiff nor the defendants were aware of the cotenancy relationship which this court has assumed existed among them.

In this case, adverse possession depends upon two elements: (1) the intent of the possessing party; and (2) the sufficiency of his conduct for an ouster of a cotenant or stranger. It is essential that the following distinctions be made:

(1) The manifest intent required of a knowing cotenant and a non-knowing cotenant in possession:

(a) Possession of commonly owned land by a cotenant, which is generally referable to his right as a cotenant, does not imply hostility. Thus, for a knowing cotenant in possession of land to oust the cotenant who is not in possession, the latter must have actual notice of the hostile intent of the former; or, the conduct of the former must be such that the hostile intent will be presumed from the latter's manifest, open, notorious and hostile conduct. Without actual notice, or implied notice by conduct, there is no manifestation of intention to claim adversely. Therefore, the possessing cotenant's conduct may be presumed by the cotenant out of possession to be in keeping with the former's right as a cotenant. See *Cox, Hicks, McKnight* and *Shull,* cited above.

(b) When one cotenant, whether knowing or non-knowing, conveys the entire estate to a third party who has

theretofore been an entire stranger to the title, and the grantee takes possession claiming exclusive title, such conveyance illustrates sufficient hostility on the part of the possessor to operate as a disseisin of the other tenants and convert the possession of the grantee into an adverse possession. *Scramlin v. Warner, supra; Church v. State, supra; Biggart v. Evans,* 36 Wash. 212, 78 P. 925 (1904); *Elder v. McClaskey,* 70 F. 529 (6th Cir. 1895).

(c) When the cotenant in possession of land is a non-knowing cotenant, *i.e.,* one who is unaware of the existence of the cotenancy, subjectively he is a stranger to the title held by the non-possessing cotenant; and, therefore, may possess the requisite intent of a "stranger" for adverse possession. If he does possess the "stranger's" intent, and his conduct complies with the general statutory requirements for ouster by adverse possession, his claim is perfected. *Arendale v. Washington,* 213 Ala. 23, 104 So. 133 (1925); *McKinney v. Beattie,* 157 Ark. 356, 248 S.W. 280 (1923); *Johns v. Scobie,* 12 Cal. 2d 618, 86 P.2d 820, 121 A.L.R. 1404 (1939); 82 A.L.R.2d 170, § 41.

(2) The duty of a knowing and a non-knowing cotenant out of possession:

(a) The knowing cotenant out of possession who has notice or is held to have notice of the hostile acts of a "stranger" to his title, must act to protect his position, or suffer the consequential loss of his title. *Scramlin v. Warner, supra; Cox v. Tompkinson, supra; Livingston v. Livingston, supra; Lindsey v. Atkison,* 250 Ala. 481, 35 So. 2d 191 (1948); *Carney v. Simmonds,* 49 Cal. 2d 84, 315 P.2d 305 (1957). But the acts of a cotenant in possession which appear hostile to the world at large do not place an obligation to act upon the cotenant out of possession, until he learns—actually or constructively—of the accompanying hostile intent. *Cox v. Tompkinson, supra; McKnight v. Basilides, supra.*

(b) A non-possessing cotenant who is unaware of his position as a cotenant is in the same position as any other

member of the public at large. Thus, when a person claims sole and exclusive ownership of property and the non-possessing cotenant has notice of this claim, actual or constructive, he is bound in the same way as those who, by mistake of fact or law, are ignorant of their interest and have allowed strangers to claim adversely to their property rights. *McKinney v. Beattie, supra; Smith v. Hamakua Mill Co.,* 13 Hawaii 716 (1901); *Pebia v. Hamakua Mill Co.,* 30 Hawaii 100 (1927); *Replogle v. Replogle,* 350 S.W.2d 735 (Mo. 1961); *McCook v. Amarada Petroleum Corp.,* 93 S.W.2d 482 (Tex. Civ. App. 1936). *Contra,* see 5 Thompson, Real Property, 593-595 (1957 Replacement); *Hydas v. Johnson,* 28 Tenn. App. 126, 187 S.W.2d 534 (1944); *Bonds v. Bonds,* 226 Miss. 348, 84 So. 2d 397 (1956); *Hannah v. Littrell,* 304 Ky. 304, 200 S.W.2d 729 (1947).

The court believes these distinctions are in keeping with the public policy behind the doctrine of adverse possession. We find plaintiff comes within (1) (c) and defendants within (2) (b) above. Defendants had actual notice of the adverse holding of the plaintiff against the world at large. They believed plaintiff owned this property. Plaintiff has complied with the essential elements of RCW 7.28.070.

▮ Also, defendants had constructive notice of plaintiff's actual, open and notorious possession of this property from the time of the probate of Lulu Z. Nicholas' estate. They were sufficiently aware of that proceeding to raise some question as to her competency. This incident served as constructive notice to them of plaintiff's claim to the property devised to him and required them to examine the history of that transaction. As stated in *Enterprise Timber, Inc. v. Washington Title Ins. Co.,* 76 Wn.2d 479, 483, 457 P.2d 600 (1969):

> One who has notice of facts sufficient to prompt a person of average prudence to inquire is deemed to have notice of all facts which reasonable inquiry would disclose.

The same historical facts involving the transactions con-

cerning this property were available to the defendants in 1951 as were available when this action was instituted, approximately 15 years later. Judge Taft, in *Elder v. McClaskey, supra,* quoting Mr. Justice Bradley in *In re Broderick's Will,* 88 U.S. (21 Wall.) 503, 519 (1874), stated as follows:

"Parties cannot, by their seclusion from the means of information, claim exemption from the laws that control human affairs, and set up a right to open up all transactions of the past. The world must move on, and those who claim an interest in persons and things must be charged with the knowledge of their status and condition, and of the vicissitudes to which they are subject."

Judgment is affirmed.

EVANS, C. J., and GREEN, J., concur.

---

Petition for modification denied November 3, 1969.