2016 APR 25 AM 10: 2


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| VAN NHU HUYNH, | ) | DIVISION ONE |
| Respondent, | )<br>)<br>) | No. 73457-1-I |
| v. | )<br>) | UNPUBLISHED OPINION |
| LEUNG HING LI, | )<br>) | |
| Appellant. | ) | FILED: April 25, 2016 |

DWYER, J. — To prevail on a claim of adverse possession against a cotenant, the claimant must show ouster, an unequivocal outward act of exclusive ownership. Ouster must be proved by clear and convincing evidence. On summary judgment, Van Nhu Huynh asserted that her possession of three properties co-owned with her former husband, Leung Hing Li, was hostile for the required 10-year period. But Hyunh did not set forth undisputed facts clearly and convincingly establishing ouster. Thus, entry of summary judgment was improper. Accordingly, we reverse.

I

In 1980, Van Nhu Huynh and Leung Hing Li married and began residing at 4431 Letitia Avenue S. in Seattle, a home Li owned before the marriage. During their marriage, they had two daughters and created two businesses.

In 1987, Huynh and Li divorced. They nevertheless continued to live together, operated their businesses, and jointly managed their assets. That year, Li gave Huynh a general power of attorney to handle his financial affairs when he was out of the country. The power of attorney was never revoked.

After their divorce, Huynh and Li engaged in three transactions relevant to this appeal. First, in 1988, for $178,000, they purchased property located at 1725 Victoria Avenue SW in Seattle, taking title as husband and wife. They used their joint business income to purchase the property.

Second, in 1991, they purchased property located at 2367 13th Avenue in Seattle, again using funds from their business and again taking title as husband and wife.

Third, in 1992, they received a loan to pay for the construction of a house on the Victoria Avenue property. They secured the loan by using the Letitia Avenue property, and placed Huynh's name on the title to that property with Li, as husband and wife.

In 1993, Li and Huynh moved into the new house on Victoria Avenue and began renting the Letitia property. The rental income was placed into a joint account and was used to pay property expenses.

In 1995, Li remarried. For a time, he continued to reside with Huynh. In 1997, he moved to New York to live with his new wife and her brother. Huynh claims that Li's move was prompted because Huynh refused to let him continue to live at their house and, additionally, prevented him from having access to their properties. Li claims that he left to pursue business opportunities.

-2-

In 1998, Li executed a special power of attorney, giving Huynh authority to sell their jointly owned real property adjacent to the Letitia Avenue parcel. They later divided the sale proceeds.

In April 1998, Huynh sent Li a breakdown of the property expenses for the Letitia Avenue and Victoria Avenue properties. The handwritten documents indicate that Huynh and Li each held a "50%" property interest.

From 2000 through 2011, Huynh and Li spoke between three and five times by telephone. According to Huynh, the parties discussed their children during these calls but never addressed ownership of the properties. Huynh stated that she told Li that she no longer wanted to converse with him and put an end to the calls. Li asserts that "[a]t no time during these telephone conversations did [Huynh] request that I transfer the Subject Properties to her or claim that the Subject Properties were hers and not mine." During this period, Li's name continued to appear on the utility accounts for the residential properties.

In a letter from counsel dated September 30, 2011, Huynh asked Li to quitclaim to her his interest in the Victoria Avenue, 13th Avenue, and Letitia Avenue properties. Li did not cooperate. In 2012, Huynh repeated her request.

On September 11, 2012, Huynh filed a complaint in King County Superior Court seeking to quiet title to the three properties. The trial date was continued several times.

On January 30, 2015, Huynh filed an amended motion for summary judgment alleging adverse possession. In response, Li asserted that, as a cotenant, he was entitled to an order of partition and an accounting.

On February 27, 2015, the court granted summary judgment. That same day, the court issued an order quieting title in the subject properties in favor of Huynh and dismissing with prejudice Li's claims for partition and an accounting.

On April 20, 2015, the court denied Li's motion for reconsideration.

Li appeals.

II

Li contends that the trial court erred by granting summary judgment based on Huynh's claim of adverse possession. This is so, he asserts, because a genuine issue of material fact exists on the question of whether Huynh's possession of the properties was hostile.

We review an order granting summary judgment de novo, and perform the same inquiry as the trial court. Owen v. Burlington N. & Santa Fe R.R. Co., 153 Wn.2d 780, 787, 108 P.3d 1220 (2005). On summary judgment, the moving party bears the initial burden of showing an absence of material fact. Young v. Key Pharm., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Am. Express Centurion Bank v. Stratman, 172 Wn. App. 667, 673, 292 P.3d 128 (2012). A genuine issue of material fact exists where reasonable minds could differ regarding the facts controlling the outcome of the litigation. Parks v. Fink, 173

-4-

Wn. App. 366, 374, 293 P.3d 1275 (2013). We consider the evidence and all reasonable inferences in the light most favorable to Li, the nonmoving party. Stratman, 172 Wn. App. at 673.

To prevail on a claim of adverse possession, Huynh must demonstrate possession that was (1) open and notorious, (2) actual and uninterrupted, (3) exclusive, and (4) hostile for the statutory 10-year period. Chaplin v. Sanders, 100 Wn.2d 853, 857, 676 P.2d 431 (1984); RCW 4.16.020. The burden of establishing each element is on the party claiming to have adversely possessed the property. Anderson v. Hudak, 80 Wn. App. 398, 401-02, 907 P.2d 305 (1995). Li disputes only whether Huynh's possession of the properties was hostile.

It is undisputed that Li and Huynh held the subject properties as cotenants during the period relevant to this appeal. Generally, a cotenant claiming adverse possession against another cotenant must prove ouster. Thor v. McDearmid, 63 Wn. App. 193, 207, 817 P.2d 1380 (1991). Because cotenants are presumed to possess their property in common, the standard of proof for ouster is more stringent than for a common adverse possession claim. Nicholas v. Cousins, 1 Wn. App. 133, 137, 459 P.2d 970 (1969). Thus, to establish ouster, the cotenant must demonstrate by clear and convincing evidence an unequivocal "outward act" of "exclusive ownership by a tenant in possession, of such a nature as to preclude the idea of a joint ownership brought home to the cotenant." Nicholas, 1 Wn. App. at 137. In other words, there must be a "repudiation or disavowal of the relation of cotenancy between them . . . [consisting of] any act or conduct

-5-

signifying his intention to hold, occupy, and enjoy the premises exclusively."

Shull v. Shepherd, 63 Wn.2d 503, 506, 387 P.2d 767 (1963) (quoting 1 Am. Jur.

Adverse Possession § 54, at 824 (1959)). "Mere possession by one cotenant

alone will not ripen into title by adverse possession, even though it be continued

without interruption for the period of the statute of limitations." Shull, 63 Wn.2d at

505.

In her summary judgment pleadings, Huynh relied heavily on Li's

deposition testimony to support the claim that her possession was hostile. For

instance, Li expressed frustration that Huynh would not let him access the

property:

> [Plaintiff's Counsel]: How do you feel about the fact that Van
> Huynh has taken control of these three properties?
> [Li]: What do you mean? I don't understand.
> [Plaintiff's Counsel]: Are you pleased by it?
> [Li]: She controls all of my money, assets, and property, and she
> wouldn't let me put my hand on it. This is not—This is not normal.

Li also expressed dismay at Huynh's unresponsiveness:

> [Plaintiff's Counsel]: So the last time that you did anything to obtain
> any of the money or assets or properties that you claim you are
> owed was in 2000; is that correct?
> [Li]: She should have given all these things back to me a long time
> ago, but she wouldn't. And as soon as I bring it up, she just would
> ignore me completely.

Li also stated that he did not give Huynh permission to take the properties:

> [Plaintiff's Counsel]: Do you feel like she's taken these properties
> from you?
> [Li]: She is that type of person.
> [Plaintiff's Counsel]: Did she have your permission to take the
> properties?
> [Li]: No.

Li contends that his deposition statements are insufficient to establish ouster. To the contrary, he claims that the evidence supports a reasonable inference that the possession was not hostile because (1) he left voluntarily in 1997 to go to New York, (2) Li and Huynh sold jointly owned property after he left and shared the proceeds, (3) Huynh deposited rental income from the properties into a jointly owned bank account, (4) the utility bills continued to reflect both of their names, (5) Huynh sent Li a property expense breakdown a year after he left for New York, (6) Huynh failed to notify him of her intent to claim the properties as her own until 2011 when she asked him to execute quitclaim deeds, and (7) Li stated in his deposition that he believed Huynh was "helping" him with his property until she filed the lawsuit in 2012.

In support of his contention, Li relies principally on <u>Graves v. Graves</u>, 48 Wash. 664, 94 P. 481 (1908). In that case, a husband and wife held joint title to real property. The couple separated and for more than 10 years the wife asserted no interest in the property while the husband remained in possession, collected rents, and paid taxes. The husband alleged that his possession, rent collection, and payment of taxes supported a claim for adverse possession. Our Supreme Court disagreed, reasoning that such actions were consistent with a cotenant's right of possession:

> The mere receipt and retention by one cotentant in possession of all the rents and profits does not of itself constitute an adverse possession, and will not ripen into title as against the others, though continued for the statutory period.

<u>Graves</u>, 48 Wash. at 670 (quoting 1 Cyc. <u>Adverse Possession</u> 1076-77 (1901)). This is so, the court explained, because possession by a cotentant is presumed to be for the benefit of all owners. <u>Graves</u>, 48 Wash. at 669.

Huynh attempts to distinguish <u>Graves</u> on the basis that in <u>Graves</u> there was no "outward act of exclusive ownership by the adverse claimants that would put the non-possessing cotenants on notice." Br. of Resp't at 13. Yet beyond implying that there was such an outward act here, Huynh omits discussion of ouster from her briefing.

Instead, she argues that "[t]he way [Huynh] treated the Subject Properties since 1998 put Li on notice." Br. of Resp't at 16. She relies on <u>Nicholas</u> and <u>Chaplin</u> for the proposition that the hostility element of adverse possession merely requires the claimant to "treat the land as his own as against the world throughout the statutory period." <u>Chaplin</u>, 100 Wn.2d at 860-61. But <u>Chaplin</u> did not involve an adverse possession claim between cotenants. And in <u>Nicholas</u>, the court held that there must be "outward acts of exclusive ownership by a tenant in possession, of such a nature as to preclude the idea of joint ownership," and explained that "[s]tronger evidence is required to show adverse possession by a tenant in common than by a stranger, but the evidence need not differ in kind." <u>Nicholas</u>, 1 Wn. App. at 137. As between cotenants, an adverse possession claim still requires "clear, unequivocal, unmistakable or convincing evidence, not just substantial evidence" to support a finding of ouster against a cotenant. <u>Thor</u>, 63 Wn. App. at 207.

Thus, on this issue, Huynh's argument that her collection of rents, exclusivity of possession, management of the properties, and payment of taxes establish that her possession of the property was hostile as to Li rests on a false premise. These facts do not show hostility because the acts asserted are entirely consistent with her rights as a cotenant of the property. She was entitled to act in this way and her decision to do so was not in derogation of Li's rights in the property.

The evidence Huynh put forth falls far short of meeting the clear and convincing evidence standard that was her burden. For instance, she dismisses Li's assertion that he was not kicked out of the house, but voluntarily left, as "so obviously irrelevant/immaterial to any dispositive issue that they require no explanation." Br. of Resp't at 15. But this is the very action she relied on to establish ouster in her summary judgment motion ("After being ousted from the Subject Properties by [Huynh] in 1997, Li did not return to the State of Washington until 2012."). Notwithstanding her dismissiveness, we view the evidence in the light most favorable to Li.

Similarly, Huynh focuses on deposition statements by Li expressing his frustration with Huynh for denying him access to the property. But these statements encompass an unspecified time period and are at best ambiguous as to when Li's frustration with Huynh began. In fact, during his deposition Li claimed that until Huynh filed the 2012 lawsuit, he "still thought [Huynh] was helping me."

Considering all of the evidence in the light most favorable to Li, there is a genuine question of material fact regarding whether ouster occurred. For example, although Huynh claimed that she ousted Li from the properties in 1997, she sent him an expense breakdown a year later that reflected equal ownership, she continued to deposit rents into a joint account, and she maintained utility accounts in both of their names. These actions all occurred after the supposed ouster occurred. In addition, Huynh and Li both agree that their conversations between 2000 and 2011 involved no discussion of the properties. Finally, Huynh's 2011 request that Li quitclaim his interest in the properties implies recognition on her part that he, in fact, had such an interest to convey. Viewed most favorably to Li, this evidence raises a reasonable inference that Huynh's possession of the properties was not hostile.

Huynh failed to meet her burden of showing that no genuine issue of material fact exists on the question of whether her possession was hostile to Li during the statutory period.[1]

III

Given our resolution of the preceding issue, we also reverse the trial court's dismissal of Li's counterclaim for partition and an accounting. As indicated above, a cotenant's exclusive possession of the shared property is insufficient to trigger the statute of limitations on property claims, in the absence

_____

[1] Huynh claims that Li should be estopped from asserting ownership in the properties because he did not claim them on his tax return, citing Mahoney-Buntzman v. Buntzman, 12 N.Y.3d 415, 909 N.E.2d 62, 881 N.Y.S.2d 369 (2009). That marital dissolution case involved the characterization of funds from a stock sale as community or separate property, not a claim of adverse possession of real property. Her claim is unpersuasive.

of an ouster. <u>Shull</u>, 63 Wn.2d at 505; <u>McKnight v. Basilides</u>, 19 Wn.2d 391, 400, 143 P.2d 307 (1943). Thus, the question of whether ouster occurred is also critical to whether Li's claims are time barred under RCW 4.16.020 and RCW 4.16.040.

Likewise, given our resolution we need not address Li's argument that the court erred in denying his motion to continue the summary judgment hearing.

Reversed and remanded.

We concur: